## W. H. STALEY v. HEBER STONE ET AL.

Decided January 6, 1906.

**1.—Vendor—Rescission—Limitation—Vendee.**

The devisees of the original vendor, because of nonpayment of the purchase money, brought suit in trespass to try title to recover the land sold more than twenty years before against the vendee of the original vendee. The court charged the jury as follows: "The plaintiffs occupy the same attitude to the case as would the original vendor were he alive and prosecuting the suit, and the defendant has exactly whatever title and interest the first vendee could now assert under his deed from said vendor had he not made a deed to the defendant." Held, correct under the facts of this case.

**2.—Same—Charge of the Court.**

Charges considered, and held warranted by the pleading and the evidence.

**3.—Same—Same—Vendor's Lien—Notice.**

The record showed that the vendor had expressly retained a lien on the land to secure part of the purchase money. This was notice to the defendant that the title was still in the vendor, or at least put him on inquiry; having failed to make inquiry he is in no better position than the original vendee.

**4.—Irrelevant Testimony—Independent Transaction.**

It was not error to exclude the testimony of a third party that he had bought land from the same vendor; that a vendor's lien was retained to secure two notes for part of the purchase money; that said notes were paid, but no release taken, and that plaintiffs were threatening to sue for this land also. It was a collateral issue, and not germane to this controversy.

**5.—Relevant Evidence.**

Tax receipts showing payment of taxes by plaintiffs on the land sued for, and the contracts of lease by them to other parties of the same land, were pertinent as tending to show that plaintiffs were asserting ownership of the land.

**6.—Improvements—Good Faith.**

Facts considered, and held to show such want of good faith as to justify a verdict against the defendant on his claim for improvements made.

Appeal from the District Court of Navarro County. Tried below before Hon. L. B. Cobb.

*Richard Mays* and *Sam'l R. Frost,* for appellant.—There being no allegation in the pleading of plaintiffs to the effect that J. M. Barnes and W. F. Barnes, or either of them, or that Johnson and Beardsley, ever, at any time, surrendered the land in question to either J. D. Giddings, or to the plaintiffs, with the mutual intent or understanding that the sale made of the land by Giddings to the Barnses was cancelled, and there being no evidence in support of such issue had it been made by the pleadings, the court was not authorized to submit such issue to the consideration of the jury. Greenwall v. Markowitz, 97 Texas, 486; Texas & Pac. Ry. Co. v. Wisenor, 66 Texas, 675; Ellis v. Singletary, 45 Texas, 47; Dean v. Lyons, 47 Texas, 20; Houston & T. C. Ry. Co. v. Gilmore, 62 Texas, 392; Houston & T. C. Ry. Co. v. Rider, 62 Texas, 270; Cook v. Dennis, 61 Texas, 248; Frisby v. Withers, 61 Texas, 142.

The court erred in instructing the jury as follows:

"If you believe from the evidence that the $260 note was never paid, and that shortly after the Barneses conveyed to Johnson and Beardsley the latter abandoned the land without paying anything on their purchase, and that never after that the Barneses or their heirs asserted or exercised any claim or control over the land and abandoned the same altogether, and that within ten years after the note became due and after such abandonment the plaintiffs rescinded the sale to Barnes, leased out the land, rendered it for taxes and openly claimed and took possession of the land so as to reasonably indicate that they were claiming in repudiation of the sale to Barnes, you will regard the sale to Barnes by Giddings as cancelled and find for plaintiffs the land." Castro v. Illies, 22 Texas, 502; San Antonio v. Ostrom, 14 S. W. Rep., 66; Wood v. Chambers, 20 Texas, 252; Gulf, C. & S. F. Ry. Co. v. Box, 81 Texas, 674; Redden v. Smith, 65 Texas, 28; Swan v. Larkin, 28 S. W. Rep., 217; Smith v. Fordyce, 18 S. W. Rep., 663; Brown v. Missouri Pac. Ry. Co., 18 S. W. Rep., 670; International & G. N. Ry. Co. v. Ormond, 62 Texas, 277; Railway Co. v. Shiflett, 83 S. W. Rep., 677; Galveston, H. & S. A. Ry. Co. v. Kutac, 76 Texas, 478; Moore v. Giesecke, 76 Texas, 548.

An issue should not be submitted or stated to the jury in the charge given them by the court, unless such issue is made by the pleadings and there is some evidence before them tending to support the same, as such charge is calculated to confuse the minds of the jury as to the true issues in the case, and to mislead the jury to a determination of their verdict supported neither by the pleadings nor the evidence. Houston & T. C. Ry. v. Terry, 42 Texas, 451; Loving v. Dixon, 56 Texas, 79; Dennison v. League, 16 Texas, 408; Markham v. Carothers, 47 Texas, 22; Texas, etc., Ry. v. French, 86 Texas, 98; East Texas Ins. Co. v. Brown, 82 Texas, 637; Gulf, C. & S. F. Ry. v. Vieno, 7 Texas Civ. App., 350.

It having been proved on the trial, that the defendant made permanent and valuable improvements on the land in controversy believing at the time that he had acquired such title to the premises, as that by payment of the vendor's lien note, if it had not been paid, the superior legal title would vest in him, and the verdict of the jury having been wrongfully rendered against him on the question of his right to recover for the value of such improvements, it was the duty of the court to have

granted him a new trial. Kauffman & Runge v. Brown, 83 Texas, 47; Huffman v. Mulkey, 78 Texas, 562; Patrick v. Roach, 21 Texas, 256; Eberling v. Deutscher Verein, 72 Texas, 341; Stitzle v. Evans, 74 Texas, 599; Houston v. Sneed, 15 Texas, 310; Sartain v. Hamilton, 12 Texas, 222; Hutchins v. Bacon, 46 Texas, 413; Hill v. Spear, 48 Texas, 584; McDaniel v. Needham, 61 Texas, 274; Cole v. Bammel, 62 Texas, 117; French v. Grenet, 57 Texas, 273; Johnson v. Bryan, 62 Texas, 626; Gaither v. Hanrick, 69 Texas, 98. Defendant believing that he was entitled to acquire the legal title to the land. Sellman v. Lee, 55 Texas, 322; Thompson v. Comstock, 59 Texas, 319.

Stone and Giddings could not by mere mental resolution disaffirm the sale made by them to the Barneses, and thereby reinvest in themselves the title and possession of the 82 acres of land. To accomplish such result, some affirmative action on their part was necessary, including an actual taking of the land. The use of fences of others without their consent, enclosing a larger tract of land including that in controversy, is insufficient. Particularly so, when the larger tract is open more or less all the time, and affords pasture for stock generally, as well as a common passageway for the community generally. Vineyards v. Brundrett, 17 Texas Civ. App., 151; Polk v. Beaumont Pasture Co., 64 S. W. Rep., 61; Freedman v. Bonner, 40 S. W. Rep., 48; Batts Stat., art. 3345, 7.

Where a deed to land has been executed and delivered, a considerable part of the purchase money being paid in cash, and the remainder in notes retaining the vendor's lien, and the purchaser goes into possession, rescission, such as will operate to reinvest the title in the grantor, can not be accomplished unless it be by writing or decree of court, for to allow otherwise would be violative of the statute of frauds.

Where a part of the purchase money is paid in cash, and the remainder in notes to secure which the vendor's lien is retained in the deed, the contract at least to the extent of the cash payment becomes executed and the title to that extent passes. And the vendor is without power to rescind without an offer to repay the money received. Huffman v. Mulkey, 78 Texas, 561; Sanborn v. Murphy, 86 Texas, 443; Liverpool Insurance Co. v. Ricker, 10 Texas Civ. App., 266; Dial v. Crain, 10 Texas, 453; Sanborn v. Murphy, 5 Texas Civ. App., 511.

*Calicutt & Call,* for appellees.—The appellant, as a purchaser from the heirs of Barnes and Barnes, took no more title in the land than had Barnes. If this executory contract was ever cancelled by mutual agreement, or if appellees and those under whom they claim had ever elected to rescind said executory contract and retake possession of the land in controversy under the superior title retained in the deed, this had occurred long prior to the year 1900 when appellant pretended to purchase the land by getting a deed from Mrs. Henderson, and afterwards from J. M. Barnes, Jr., and Mrs. White. Runge v. Gilbough, 87 S. W. Rep., 832; Terhune v. First National Bank, 60 S. W. Rep., 352.

That the appellant was not entitled to compensation for improvements made upon the land. Runge v. Gilbough, 87 S. W. Rep., 837; Holstein v. Adams, 72 Texas, 490.

This not being a suit in which the vendee of the land remained in

continuous possession after its purchase (in which case he would perhaps have the right to pay off the note and redeem the land), but, this being a suit where the land had been abandoned for more than twenty years by the vendees and where the vendor had either disaffirmed the sale, and taken possession of the land for nearly twenty years or where the executory contract had been mutually cancelled by the vendor and vendees for nearly twenty years and vendor had paid taxes thereon; and the land, in the meantime, had advanced in value from $5 to $25 per acre; it would be inequitable for the vendees or for the purchaser from them to be allowed under these circumstances and conditions to now redeem the land and pay off the note. Walsh v. Ford, 66 S. W. Rep., 854; White v. Cole, 29 S. W. Rep., 1148; Graham v. West, 26 S. W. Rep., 920; Terhune v. First National Bank, 60 S. W. Rep., 353; Stone L. & Co. v. Boon, 73 Texas, 549 (on tender); Thompson v. Robinson, 93 Texas, 165; Curren v. Texas L. & M. Co., 60 S. W. Rep., 466; Farmer's Loan & Trust Co. v. Beckley, 93 Texas, 267; Kennedy v. Embry, 72 Texas, 387 (abandonment and increased value); Efron v. Burgower, 57 S. W. Rep., 306; Ellis v. Hannay, 64 S. W. Rep., 684; Evans v. Bentley, 29 S. W. Rep., 499 (increased value and abandonment); Lanier v. Foust, 81 Texas, 187; Estes v. Browning, 60 Am. Dec., 238, and note; Seabury v. Stewart, 58 Am. Dec., 254 and note.

RAINEY, CHIEF JUSTICE.—This suit was instituted by Heber Stone and wife for themselves and as independent executors of the estate of Mrs. A. M. Giddings, deceased, against W. H. Staley, the appellant, to recover 82 acres of the Anderson survey in Navarro County, the original petition being in form of trespass to try title.

Staley plead not guilty, and specially answered claiming title through J. M. and W. F. Barnes and setting out that said land was in 1877 sold to J. M. and W. F. Barnes by J. D. Giddings, the then owner, in consideration of $410, of which $150 was paid in cash and a note executed by said Barnes for $260, and that if said note was never paid that such a length of time has elapsed that the right to rescind has elapsed and the claim of plaintiff is a stale demand and barred in law and equity. And, in the alternative, that if plaintiff's claim still exists that he is ready and willing to pay off and discharge said note and tenders for such purpose the sum of $1,100. Further that he had made improvements in good faith and asked judgment therefor.

A trial was had before a jury and resulted in a verdict and judgment for plaintiff, from which this appeal is prosecuted.

The evidence shows that on and prior to November 1877, J. D. Giddings, of Brenham, Washington County, Texas, was the owner of the H. C. Anderson 1280 acre survey of land in Navarro County. He contracted to Collum Brothers about 1,100 acres of this land, which contract was rescinded and the land returned to Giddings in 1883. On November 10, 1877, Giddings conveyed 100 acres of the Anderson survey to S. L. Chambliss, and on November 29, 1877, Giddings conveyed 82 acres of said survey to J. M. and W. F. Barnes, the consideration recited in the deed being $410, of which $150 was paid in cash and the balance was evidenced by a note for $260 of same date of deed, payable to J. D. Giddings, or order, and due twelve months from date. The vendor's lien

was retained in the deed until the final payment of the promissory note hereinbefore set forth. This deed contained the usual covenant of warranty and was duly acknowledged and filed for record in Navarro County, February 2, 1878.

In January, 1878, J. M. and W. F. Barnes conveyed the said 82 acres to J. B. Johnson and F. M. Beardsley. The consideration was part cash and part on time and a lien was reserved to secure the deferred payment. This deed was recorded in February, 1878. Johnson and Beardsley took possession of the land and made some improvements thereon and lived there until sometime early in 1879, when they left for parts unknown, under suspicion of violating the criminal law. After they left in 1879, W. F. Barnes, during that year, cut and hauled wood from it. After this he moved to another part of the county, and after a few years left the county and never returned, and there is no evidence that he ever afterwards asserted or claimed any control or ownership of said land. In 1878, J. M. Barnes removed from Navarro County and there is no evidence that he ever afterwards asserted or claimed any control or ownership of the land.

In June, 1878, J. D. Giddings, died, leaving an independent will and naming as legatees his widow, Ann M. Giddings, and his daughter, Louise Giddings, who afterwards married Heber Stone.

W. R. Bright, then living in Corsicana, acted as agent for J. D. Giddings in selling said 82 acres of land to the Barnes. He received the consideration, that is, the cash and the note; after deducting his commissions he advised Giddings that he held the balance of cash to Giddings' credit and would retain the note for collection without further charge, unless suit became necessary. W. R. Bright died in 1895.

In 1880, Heber Stone, the husband of Louise Giddings, acting for the legatees, took charge of the estate of J. D. Giddings, and in 1883 he leased to W. R. Bright for ten years the land described as follows: "1,180 acres of land lying in the county of Navarro and State aforesaid, being the unsold portion of the H. G. Anderson 1,280 acre grant." Under this lease there was to be cultivated not less than 100 acres in the year 1884, and not less than 50 acres additional each succeeding year, and provided for the building of houses, fences, etc., and the lessee was to pay to the lessor one-half the gross receipts of the place. This lease was cancelled by mutual consent at the close of 1887, and another lease was made by the said widow and daughter and her husband to S. J. T. Johnson, for five years, beginning January 1, 1888, and ending December 31, 1892, the consideration being the payment of $500 yearly. The land described in this lease was as follows: "1,180 acres of land lying in the county of Navarro and State aforesaid, being the H. C. Anderson survey, less 100 acres conveyed by J. D. Giddings to S. L. Chambliss. " Johnson under this lease took actual possession of the land and enclosed it. In 1885, the office of W. R. Bright was destroyed by fire and with it a great many of his notes and papers.

J. D. Giddings paid taxes in 1878 on 80½ acres. J. D. Giddings' estate paid taxes for 1879 on 80 acres; for 1880 on 80 acres; for 1881 on 80 acres; for 1882 on 1180 acres; for 1883, 1884 and 1885 on 1280 acres; and from this date to and including 1894 on 1198 acres; then for the next four years, including 1898 on 1098 acres, and since

the last date on 1190 acres. In 1901, and since, W. H. Staley has paid taxes on 100 acres of the survey. At the time of the trial J. M. Barnes and W. F. Barnes had been dead for several years. Mrs. Fannie White, daughter of J. M. Barnes survived her father. There were two children of W. F. Barnes who survived him—Myrtle Henderson and J. M. Barnes, Jr. W. H. Staley procured deeds conveying to him the land in controversy from these survivors of J. M. and W. F. Barnes, as follows: From Myrtle Henderson and husband, September 7, 1900. From J. M. Barnes, July 18, 1901. From Fannie White, April 5, 1904. The deeds made by Mrs. Henderson and Mrs. White purport to convey the land and also their interests therein by virtue of the vendor's lien note for $150, executed in favor of their ancestors by Johnson and Beardsley. In 1900 and subsequently, but prior to this suit, Staley fenced the land, built a dwelling house and placed other improvements thereon. The land is now worth $25 per acre. The discovery of oil and improvement of other lands in the vicinity has to some extent enhanced its value.

The Barnes were never in actual possession of the 82 acres of land. They lived on 100 acres adjoining said 82 acres. The deed from Mrs. Fannie White, the daughter of J. M. Barnes, to appellant, recites a consideration of $20. She testified she never received a cent. Mrs. Myrtle Henderson, a daughter of W. F. Barnes, recites in her deed to appellant a consideration of $40, though she testified she thought the consideration was only $10. The consideration for the deed from J. M. Barnes (Jr.) is not shown. Appellant could not say (or would not) what he paid Barnes.

The original deed from J. D. Giddings to J. M. and W. F. Barnes was in the possession of appellees at the time of the trial. The $260 note given by the Barnes to J. D. Giddings is lost, no one living being able to account for it, all the parties to the original transaction being dead.

We conclude that the said note was never paid. That the sale of the land was either rescinded by the parties or was abandoned by the Barnes and repudiated by Giddings. That the circumstances of the purchase by appellant show him not to be a purchaser in good faith.

About 1901, the Anderson survey was surveyed when it was discovered that there was an excess of 100 acres.

Mrs. Giddings died in 1902 and left her property to her daughter, Mrs. Stone.

*Conclusions of Law.*—Appellant's first assignment of error is: "The court erred in the third paragraph of the main charge given the jury, in that the jury are instructed as follows: 'The land was sold by J. D. Giddings to J. M. and W. F. Barnes, November 29, 1877, for $150 cash, and a note for $260 due one year later, with interest at ten percent per annum. Plaintiffs claim that the note was never paid and that therefore they are entitled to recover the land; that they rescinded the sale on account of nonpayment of the note, and they also claim, that the vendees under Giddings failed to pay the note, turned back the land, and that the plaintiffs thereupon treated the land as their own, and that for these reasons the defendant, who claims under the heirs of

Barnes, acquired no right to hold the land and that defendant's right to pay the note and occupy the land is barred.'"

The contention, as shown by the proposition under this assignment, is: "There being no allegation in the pleading of plaintiff, that J. M. Barnes and W. F. Barnes had 'turned back,' or relinquished the land in question to their vendor, J. D. Giddings, or to his representatives after his death, the instruction of the court to the jury advising that such issue was tendered by the plaintiff's pleadings was error, in that it was misleading, and was calculated to induce the jury to consider certain of the circumstances in evidence as applicable to, and sustaining such assumed issue, and to base their verdict thereon."

We do not think the expression "turned back" the land in the charge complained of was such as to mislead the jury. The suit was based on the theory that the note never having been paid the title to the land remained in Giddings and as the Barnes had abandoned the land and the Giddings having elected to cancel the trade they were the rightful owners of the same. Under the evidence the jury were authorized to presume that the land had been "turned back." The witnesses to the original transaction being all dead and the Barnes asserting no claim to the land after 1879, and the Giddings asserting dominion and control over it, warranted the presumption that the Barnes were more than willing to consider the contract of sale as at an end, and that Giddings might take the land back. And they were authorized to go further and presume that the Barnes had consented to the rescission. But if the contention of appellant, that plaintiffs' plea was stated broader than the plea warranted, is correct, it was more burdensome for plaintiff, and appellant should not complain.

The court instructed the jury as follows: "The plaintiffs occupy the same attitude to the case as would J. D. Giddings were he alive and prosecuting the suit, and the defendant has exactly whatever title and interest Barnes' heirs could now assert under the deed from Giddings had they not made deeds to defendant."

The contention is: "The appellant, W. H. Staley, having purchased from the heirs of the Barnes and in pursuance to such purchase gone into possession more than twenty years after the maturity of the note made by the Barnes to J. D. Giddings, without any knowledge of its nonpayment, if, in fact, it had never been paid, should be considered with more favor in the adjustment of the equities set up by him in the support of his title, than if the Barnes or their heirs were the defendants presenting the same defensive pleas as those averred by Staley."

We think there is no error in giving this charge. Defendant held the Barnes title, and the Barnes, nor their heirs, not being in possession of the land, nor making any claim thereto, no presumption arose in favor of defendant that the note was barred by limitation.

Appellant assigns as error the following paragraph of the court's charge, to wit: "If you find that the note has not been paid, and further believe from the evidence that Barnes and Johnson and Beardsley, to whom they made a deed, surrendered the land to Giddings, or plaintiffs, with intent and mutual understanding that the sale was canceled and full right and title in the land vested in Giddings, or

plaintiffs, and that by reason of such agreement and relying thereon, plaintiffs, or Mrs. Giddings, rendered the land for taxation, paid taxes, made leases of the land and had the same occupied by their lessees, and that there was no offer to pay the note until the land had greatly increased in value (if such is a fact), then you will find for the plaintiffs, the land; and in that case, if you believe from the evidence before you, that the defendant made permanent improvements on the land, enhancing its value, that such improvements were made by the defendant in good faith with an actual and reasonable belief that he was the owner of the land, then you will find from the evidence and state in your verdict the market value of the land at this time with the improvements made thereon by defendant, and such value without such improvements, and find for the defendant the difference."

The contention is that, "there being no allegation in the pleading of plaintiffs to the effect that J. M. Barnes and W. F. Barnes, or either of them, or that Johnson and Beardsley, ever, at any time, surrendered the land in question to either J. D. Giddings, or to the plaintiffs, with the mutual intent or understanding that the sale made of the land by Giddings to the Barnes was canceled, and there being no evidence in support of such issue had it been made by the pleadings, the court was not authorized to submit such issue to the consideration of the jury."

Plaintiffs' suit was a straight action of trespass to try title. By supplemental petition in reply to defendants' special defenses interposed, plaintiffs plead as follows: "That they and those under whom they claim have long since elected to cancel said executory contract shown by said deeds referred to in defendant's answer, and now here rescinds said executory contract, and has long ago, about 1878, rescinded same; and Barnes and Barnes and Johnson and Beardsley, and those who have right to claim under them, abandoned their said contract, and abandoned said land in controversy, if they ever asserted any interest in the land in controversy. Plaintiffs say the $260 note was never paid by any one, and that the title to the land is and has always been in these plaintiffs and those under whom they claim; said note being barred by the statute of limitation, having long since exercised their right to rescind said executory contract and took their lands."

Under this pleading the court did not commit reversible error in telling the jury that if the Barnes and others surrendered the land to plaintiffs with mutual understanding that the sale was cancelled the plaintiffs should recover. While the plea does not, when strictly construed, convey the idea that there was a direct understanding to surrender the land, yet there was evidence that showed the parties had abandoned the trade, the effect of which was that they had surrendered the land and consented for plaintiffs to take it back. The charge, if anything, was more onerous on plaintiff than was required, in that it required the jury to believe more than was strictly necessary under the facts, and we can not perceive that the defendant was in any way injured by it.

The appellant assigns as error the following paragraph of the court's charge, to wit: "If you believe from the evidence that the $260 note was never paid, and that shortly after the Barnes conveyed to Johnson and Beardsley the latter abandoned the land without paying anything

on their purchase, and that never after that the Barnes or their heirs asserted or exercised any claim or control over the land and abandoned the same altogether, and that within ten years after the note became due and after such abandonment the plaintiffs rescinded the sale to Barnes, leased out the land, rendered it for taxes and openly claimed and took possession of the land so as to reasonably indicate that they were claiming in repudiation of the sale to Barnes, you will regard the sale to Barnes by Giddings as cancelled and find for plaintiffs the land."

The contention that the pleadings and evidence did not authorize this charge is not well taken, in that, the facts submitted were not necessary to be pleaded, and the evidence authorized it. The facts stated were very pertinent in determining the rights of the parties and no error was committed in grouping and submitting them to the jury. Nor is the charge subject to the criticism that it is on the weight of the evidence.

There was no error in the court's refusing defendant's special charge to the effect that the record showed that Giddings had sold the land to the Barnes and nothing to show the land had been reconveyed to Giddings, and that plaintiffs were not in actual possession of the land, and that defendant bought in good faith, then to find for defendant.

This charge was not applicable to the facts. The records showed that Giddings had retained a lien on the land to secure part of the purchase money. This alone appearing from the record it was notice to the defendant that the title was still in Giddings, or it was at least sufficient to put defendant on inquiry to ascertain whether or not the purchase money had been paid. There is not a particle of evidence to show that defendant exercised any diligence to ascertain the situation as to said recital in the deed and having failed to do so he is in no better attitude than the Barnes or their heirs. (Runge v. Gilbough, 87 S. W. Rep., 837.)

There was no error in excluding the testimony of G. B. Walker that he had purchased land from J. D. Giddings in which two vendor's notes were retained, that the same had been paid, but no release had been taken and that plaintiffs in this suit were threatening to revoke the conveyance, claiming said notes had not been paid. This testimony pertained to an entirely different transaction to the one in controversy. It was a collateral issue in no way germane to the controversy and was not a legitimate inquiry.

There was no error in the court's admitting in evidence tax receipts showing the payment of taxes on the land by plaintiffs. This evidence was pertinent as a circumstance showing the claim of plaintiffs that they had asserted claim to the land to the exclusion of the Barnes title.

There was no error in excluding the testimony of A. Clark, to the effect that he had never agreed to permit the plaintiffs or lessees or tenants to use his fencing for the purpose of enabling them to enclose the Anderson survey. If Clark's fencing was thus used and plaintiffs were asserting the right to so use, and were in possession of the land, it does not affect the right of plaintiffs' possession, and Clark's objection becomes immaterial as to the rights of defendant.

There was no error in the court's admitting the contract of lease from A. M. Giddings et al., to W. R. Bright. Nor that to S. J. T. Johnson.

These leases tended to show that plaintiffs were asserting ownership to the land.

What we have said on first and third assignments of error disposes of the fourteenth assignment.

The complaint that the judgment is not supported by the evidence is without merit. In fact we are of the opinion that no other proper judgment could have been rendered. All the facts and circumstances show that the Barnes had failed to pay the purchase money note for $260, had abandoned the land and were asserting no claim thereto. That plaintiffs had acquired possession, and while it seems they were not in actual possession at the time defendant bought, they were asserting ownership over same. The facts further show, in our opinion, defendant did not obtain the land in good faith, expecting to secure a perfect title, but that he acquired it hoping he might perfect title in himself by the statute of limitation. The good faith entitling defendant to pay for improvements is wanting in this case and the jury properly denied it to him.

Finding no reversible error in this case, the judgment is affirmed.

*Affirmed.*

Writ of error refused.