KENNON et al. v. MILLER et al.†

(Court of Civil Appeals of Texas. San Antonio. Jan. 24, 1912. Rehearing Denied Feb. 14, 1912.)

1. NEW TRIAL (§ 102*)—NEWLY DISCOVERED EVIDENCE—PUBLIC RECORDS.

Where, in an action to try title, defendant had testified that his grantor paid taxes on the land for five years prior to the suit, a new trial will not be granted for newly discovered evidence, though the plaintiffs show by affidavit that the tax records disclose that in one of such years taxes were not paid on all of the land, as such records were open and accessible at the time of the trial, and cannot be regarded as newly discovered.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 210–214; Dec. Dig. § 102.*]

2. NEW TRIAL (§ 105*)—NEWLY DISCOVERED EVIDENCE—CONTRADICTION OF WITNESS.

A new trial will not be granted on the ground of newly discovered evidence, where such evidence merely goes to the contradiction of a witness.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 221–223; Dec. Dig. § 105.*]

3. VENDOR AND PURCHASER (§ 239*)—BONA FIDE PURCHASERS — EQUITABLE RESERVATION.

Where a deed to land is absolute, a secret equity retained in the grantor will not affect the title of a subsequent grantee without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. § 239.*]

4. ADVERSE POSSESSION (§ 44*)—COMPUTATION OF PERIOD—CHAIN OF TITLE.

That one of the transfers in the chain of title of a holder of land was from an officer upon a sale under execution will not break the continuity of the running of the three-year statute of limitations against a former grantor endeavoring to assert a secret equity, in the absence of a showing that the sale was invalid.

[Ed. Note.—For other cases, see Adverse Possession, Cent.Dig. §§ 226–231; Dec.Dig. § 44.*]

5. ADVERSE POSSESSION (§ 78*)—COMPUTATION OF PERIOD—CHAIN OF TITLE.

Title by inheritance is sufficient to form a link in a chain of title which will sustain a plea of the statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Dec. Dig. § 78.*]

6. LIMITATION OF ACTIONS (§ 44*)—COMPUTATION OF PERIOD—CHAIN OF TITLE.

Where a plaintiff in an action to try title has previously made an absolute deed, his only recovery can be in equity upon a showing that the deed was in reality a mortgage, and, as such an action must be commenced within four years from the time of the repudiation of the trust or discovery that the grantee has wrongfully conveyed, there is no right to such a recovery where the plaintiff knew of the conveyance by his grantee and the assertion of title by the person to whom it was conveyed more than 10 years before the bringing of the action.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 44.*]

Appeal from District Court, Fayette County; B. G. Neighbors, Judge.

Action by Louisa Kennon and another against Henry Miller and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

Jas. Raley, for appellants. Brown & Lane, for appellees.

FLY, J. Appellants, Louisa Kennon and James Raley, instituted this action to try title to 50 acres of land, against Henry Miller and R. Miller, appellees, to which action appellees pleaded not guilty, three, four, five, and ten years limitations. The cause was tried without a jury, and judgment was rendered in favor of appellees.

R. J. Carr and John Dean conveyed the land in controversy to Sam Harris, at that time the husband of Louisa Kennon, on November 19, 1872, the recited consideration being $191 cash and a promissory note executed by Sam Harris for $35. That deed was recorded in April, 1874. Sam Harris died in 1878 or 1879, and on January 16, 1899, Lou Harris, his widow, and Sam Harris and Prince Harris, his only children, conveyed the land, by an instrument in form a deed, to N. Eason and M. Eason, and the latter two on December 19, 1899, conveyed the land to John Winkfield. The deed to the Easons was recorded on February 9, 1899, and their deed to Winkfield was recorded on January 19, 1900. Sam Harris, Jr., and wife on November 6, 1901, conveyed the land to John Winkfield, by deed, which was recorded on February 18, 1902. On December 6, 1904, the land was sold under execution issued out of the county court of Fayette county in a case styled M. Cockrill v. John Winkfield, and M. Cockrill was the purchaser, and his deed was recorded on January 12, 1905. Cockrill sold to appellees on February 1, 1906, and the deed was recorded on February 24, 1906. The statement of facts shows that the taxes were paid as they became due by Cockrill and appellees up to August 27, 1910, when this suit was instituted, and that they were in peaceable, adverse, and uninterrupted possession of the land all of that time, using and cultivating the same. John Winkfield had adverse possession of the land from 1900 to 1904, when the land was sold to Cockrill, using and cultivating the same, and he, Cockrill, and appellees had adverse possession of the land for more than 10 years before this suit was instituted. On February 13, 1902, Winkfield gave a deed of trust on the land to secure the payment of two notes, and Louisa Kennon knew it. As soon as John Winkfield got the deed from the Easons, he conveyed the information to Louisa Kennon that he had bought it. Louisa obtained a deed from

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

Prince Harris for his interest in the land, and conveyed one-half of the 50 acres to James Raley.

[1] This cause was tried on November 26, 1910, and at that time appellants excepted and gave notice of appeal. On December 30, 1910, appellants filed a motion for new trial on the ground, among others, that the judgment "was obtained by the defendant Henry Miller testifying before the court that M. Cockrill, his grantor, had paid all the taxes on said land for the five years from the date of Cockrill's deed to the date of filing this suit, in August, 1910." It was stated that the testimony was false, and that it was "newly discovered testimony." To the motion was appended an affidavit of the tax collector of Fayette county that taxes had been paid by Cockrill on only 15 acres of the land in 1909, although it had been properly assessed, and the mistake had occurred through the error or negligence of the tax assessor in writing with a pencil on the assessment that 35 acres of the land had been sold to Bludsworth. The only reasons given for a failure to have the testimony before the court during the trial were that appellants live 100 miles from La Grange, and did not examine the tax books, and had no reason to suspect that the taxes of 1909 had not been paid, and that "plaintiffs did not know this fact at the trial, nor within the two days after the trial, and only learned it at a recent date by a letter received from the tax collector, received this 29th day of December, 1910."

The grounds stated are insufficient to show diligence in procuring the evidence of the tax collector. The cause was tried in the county seat, and doubtless in the same building in which the records of the tax collector are kept, and appellants had been put upon notice by the pleadings that appellees claimed the land by limitation of five years, and that they had paid the taxes on the land. The records were open to them, and, if they did not consult them, it was their fault. There is no pretense that the records were not accessible to them before and during the trial. As said in Vardeman v. Edwards, 21 Tex. 737: "A party cannot be heard to say that evidence is newly discovered, which he was bound to know was a record in a public office, at all times accessible upon proper application, without at least showing some special circumstances and reasons why it could not be found or procured. From the very nature of the evidence, being documentary and matter of record in a public office, it could not be newly discovered."

[2] The evidence, on account of which the new trial was sought, was admittedly for the purpose of contradicting the evidence of Henry Miller, and for that purpose alone, and a new trial will not be granted to further that purpose. Railway v. Forsyth, 49 Tex. 171.

[3, 4] There was ample testimony to prove a title in appellees by three years limitation, as well as by ten years limitations, as hereinbefore found by us. Appellees had a consecutive chain of title from and under the sovereignty of the soil, and had and held peaceable and adverse possession of the land for more than three years before this action was instituted. The title was by a regular chain of written transfers, and appellees had no notice of any secret equities held by Louisa Kennon, if she had any, and such secret equities could not affect their title to the land. The fact that one of the transfers was from an officer who sold it under execution did not break the continuity of title, and it has never been so held by the Supreme Court, as contended by appellants. In the case of Blum v. Rogers, 71 Tex. 668, 9 S. W. 595, it was held that a defendant in execution, who would be John Winkfield in this case, could not, by remaining in or taking possession of land subsequent to the sale, claim under the three years statute because the sheriff's sale, if valid, breaks his chain of title, but not the chain of title of the man who buys at the execution sale. To the same effect is Grigsby v. May, 84 Tex. 240, 19 S. W. 343. If John Winkfield had subsequent to the execution sale attempted to convey title to the land, and appellees claimed through his conveyance, there would be a break in the chain of transfers, and the cases mentioned would apply, but they have no application whatever to the facts of this case. In order to break the line of transfer, one of the links of which was a deed made under execution, it devolved upon appellants to show that the execution sale was invalid, and that was not done. Wilson v. Palmer, 18 Tex. 592.

[5] The title by inheritance from Sam Harris to his wife and children was sufficient to form a link in a title that would sustain the plea of three years limitation. Williamson v. Simpson, 16 Tex. 433; Whitehead v. Foley, 28 Tex. 1. In the last case it was said: "Title acquired by inheritance is as regular and effectual as if by written memorial."

[6] In order to recover in this case, it became necessary for Louisa Kennon to show that the instrument made by her and her sons to the Easons was in fact and truth a mortgage, although in form a deed, and that the deed made to John Winkfield by the Easons was for her benefit, and was made to Winkfield by mistake or through his fraud. The instruments were regular upon their faces, and a recovery could not be had without setting them aside. A suit to set aside those instruments or to declare their true character and effect would be barred in four years from the time the cause of action accrued by a repudiation of the trust or from the time the fraud was discovered. The deed made by the Easons to Winkfield was a repudiation of the trust, if the deed to them

was a mortgage, and the fraud of John Winkfield and his repudiation of any trust confided in him was known by Louisa Kennon in 1900, more than 10 years before this suit was instituted, for he told her that he had bought the land, and, if that was not sufficient, in 1902 he mortgaged the land for his debts and she knew it, and knew he was claiming the land as his own. Fuller v. Oneal, 82 Tex. 417, 18 S. W. 479, 481; Railway v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Shirley v. Railway, 78 Tex. 131, 10 S. W. 543; Vodrie v. Tynan, 57 S. W. 680.

If appellants have any rights whatever in the land, they are equitable because the records placed the legal title in the Easons and from them, by successive transfers, in appellees, and, in order to establish their equitable claim, the deeds evidencing the legal title must be set aside. To determine their right to the land, they were compelled to show facts that would authorize the cancellation of the deed made to the Easons and the one by them to Winkfield. As said in McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315: "But the judgment for the land would be the consequence merely of the relief primarily granted, and could not, but for that relief, be recovered. And hence it is obvious that the question whether or not that primary relief should be granted is to be first determined by the same rules which would govern if the suit were for it alone. If, for instance, such an action were stale or barred by limitation, obviously this could not be avoided by connecting with it a prayer for the recovery of the land. This could not make the action one for the recovery of the land because the title relied on would not be sufficient. The plaintiff would have no title, unless and until he should obtain the decree establishing and enforcing his right, and he could not get that decree because his action for it would be barred."

The judgment is affirmed.