RALEY et al. v. D. SULLIVAN & CO. et al.

(Court of Civil Appeals of Texas. San Antonio. May 28, 1913. On Motion for Rehearing, June 18, 1913.)

1. APPEAL AND ERROR (§ 563*)—STATEMENT OF FACTS—FORM.

A statement of facts should be typewritten, but if the parties be unable to meet the expense of typewriting it must be prepared in neat chirographic form, and is insufficient when disfigured by erasures, interlineations, and pasters.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2500; Dec. Dig. § 563.*]

2. ADVERSE POSSESSION (§ 24*)—WHAT CONSTITUTES.

That defendant occasionally entered upon land, planting a small quantity of sugar cane, and occasionally used the land for pasturage will not constitute an adverse holding, it appearing that the amount of land used was very small; for peaceable and adverse possession means one that is actual, continuous, visible, notorious, distinct, hostile, fair, and open.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 114, 115; Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 1, pp. 227–236; vol. 8, p. 7568.]

3. VENDOR AND PURCHASER (§ 261*)—VALIDITY—PROPERTY WHICH MAY BE CONVEYED.

A vendor of land who retained a vendor's lien thereon owns a superior title to the land; and, while he cannot convey the equitable title owned by his vendee, he may convey his legal title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

4. ADVERSE POSSESSION (§ 20*) — IMPROVEMENTS IN GOOD FAITH.

Where defendant obtained a quitclaim deed to land for $15, intending to perfect her title by adverse possession, it cannot be accomplished on the theory of improvements in good faith, where such improvements were very slight and did not benefit the land, and defendant recognized the validity of an outstanding title by offering to purchase it.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 106–108; Dec. Dig. § 20.*]

5. VENDOR AND PURCHASER (§ 231*) — BONA FIDE PURCHASERS—NOTICE—RECORDS.

A purchaser of land is chargeable with notice of a prior deed of his vendor to another person, which has been duly recorded.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 43, 55, 487, 513–539; Dec. Dig. § 231.*]

6. LIMITATION OF ACTIONS (§§ 173, 182*)—PLEA OF LIMITATIONS.

No one except defendant can plead limitations, and when not pleaded it cannot be taken advantage of.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 658, 676–680, 682, 695, 705; Dec. Dig. §§ 173, 182.*]

7. LIMITATION OF ACTIONS (§ 104*)—TIME OF ACCRUAL OF ACTION—FRAUD.

Where defendant's grantee who purchased the land in suit under a contract to discharge

a vendor's lien thereon concealed his assumption of the debt, so that plaintiff could not have discovered it by any diligence, the grantee's active fraud will prevent the running of the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 511–513; Dec. Dig. § 104.*]

8. BANKRUPTCY (§ 425*)—DISCHARGE—DEBTS DISCHARGED.

Under Act July 1, 1898, c. 541, § 17, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3428), declaring that a bankrupt will not be released from debts not duly scheduled in time for proof and allowance, unless the creditors had actual knowledge of the proceedings in bankruptcy, a discharge in bankruptcy will not release a grantee of land from liability for payment of vendor's lien notes which he assumed when acquiring the land where he concealed his assumption of the debt and did not schedule either the land or debt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 775; Dec. Dig. § 425.*]

9. VENDOR AND PURCHASER (§ 265*)—CONVEYANCE BY PURCHASER—ASSUMPTION OF DEBT BY PAYEE—RIGHTS OF ORIGINAL VENDOR.

Where an owner of land who held it subject to the payment of vendor's lien notes conveyed the same, his grantee agreeing to discharge the notes, the holder of the notes might sue the grantee directly.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 700–712; Dec. Dig. § 265.*]

10. VENDOR AND PURCHASER (§ 190*)—ESTOPPEL BY DEED.

A grantor of land cannot assert title as against her grantee.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 384–392; Dec. Dig. § 190.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by D. Sullivan & Co. against Carrie Coleman, consolidated with an action by D. M. Poor against Helen Raley and others. From a judgment for plaintiffs, defendant Raley, plaintiff Poor, and others appeal. Affirmed.

Wm. Aubrey, C. S. Robinson, and James Raley, all of San Antonio, for appellants. Denman, Franklin & McGown, of San Antonio, for appellees.

FLY, C. J. Sullivan & Co. sued Carrie Coleman for debt and to foreclose a vendor's lien on block No. 1 in Mission Ridge addition, Bexar county, Tex., and D. M. Poor instituted suit against James Raley, Helen Raley, and M. H. Poor to recover said block No. 1. The two causes were consolidated, and D. Sullivan & Co. filed an amended petition alleging that R. W. Coleman executed and delivered to M. H. Poor a promissory note for $650, secured by a vendor's lien on the land described, that M. H. Poor indorsed and delivered the note to D. M. Poor, who indorsed and delivered it to petitioners; that R. W. Coleman, maker of the note, died after Sullivan & Co. purchased the note, leaving no heir to his community estate except his surviving wife, Carrie Coleman;

that she left the state of Texas in 1893 and has been absent since; that she inherited and is the owner of the land described in the note, subject to the vendor's lien; that Miss Helen Raley, D. M. Poor, and M. H. Poor are asserting some pretended claim to the property and that Carrie Coleman is now Carrie Burr. Helen Raley pleaded not guilty, and pleaded three, four, and five years' limitations and valuable improvements in good faith. D. M. Poor answered by general and special exceptions and pleaded payment of the note and four and ten years' limitation, and also set up his discharge in bankruptcy. Carrie Burr filed a plea of intervention alleging that R. W. Coleman bought the land from M. H. Poor, paying $600 in cash and giving a note for a balance of $650, that he died in 1893, that on or about April 28, 1893, she executed to D. M. Poor a deed to the land, which was done merely to secure payment of the $650 note, and she expressed a willingness to pay off and discharge the note and take the property. James Raley disclaimed any interest in the property. The cause was submitted to the court, without a jury, and judgment rendered that D. M. Poor recover the property, and that the vendor's lien of D. Sullivan & Co. be foreclosed thereon. This appeal was perfected by D. M. Poor, Helen Raley, and Carrie Burr.

[1] The statement of facts is one made up by the attorney for Helen Raley, and, in the absence of an agreement by counsel for the other parties, approved by the trial judge as corrected by him. The statement is in writing and in parts of it is so marred and disfigured by erasures, interlineations, and pasters as to be deciphered with great difficulty, and no such statement of facts should be considered by an appellate court. In this day of stenography and typewriting it is almost inexcusable to impose such a task upon a court as that of attempting to decipher a statement of facts made up as this one is. Even if unable to meet the expense of typewriting, an intelligible statement of facts might be prepared in neat chirographic form. Not only is the statement of facts patched and scratched, and interlined, but, to add to the difficulty of understanding, many questions and answers have been inserted.

[2] It appears that on May 25, 1892, M. H. Poor executed and delivered to R. W. Coleman a deed to the land in controversy, for a cash consideration of $600 and $650 evidenced by a promissory note secured by a vendor's lien on the land, which was to become due two years after date, the lien being reserved in the deed. On February 2, 1894, M. H. Poor executed a deed to the same land to D. M. Poor reserving a vendor's lien. In October, 1892, R. W. Coleman died, and on April 28, 1893, Carrie Coleman, his widow, his survivor and only heir, conveyed the

land to D. M. Poor, a vendor's lien being reserved in the deed to secure the payment of the $650 note executed by R. W. Coleman. There was a recitation in the deed that D. M. Poor assumed payment of the $650 note. The deed was filed for record on January 24, 1912. On November 24, 1906, M. H. Poor by quitclaim deed conveyed the land to Helen Raley and the same was filed for record on day of execution. That was the third deed made by M. H. Poor to the same parcel of land. The taxes on the land were paid by Helen Raley up to and including those of 1911. The suit of D. Sullivan & Co. against Carrie Coleman was filed on May 24, 1898, and was pending when Helen Raley obtained the quitclaim deed from M. H. Poor. Before the expiration of five years James Raley wrote letters to D. M. Poor offering to buy the land. He made an offer of $400 for the land on December 23, 1911, although at that time he claimed to have title to the land by three years' limitation and estoppel. He nor Helen Raley had any house on the land and no one lived on it. A few slight improvements were made on it and a narrow strip plowed. The fence was in bad repair and would not hold cattle.

The evidence was totally insufficient to show title by limitation in Helen Raley. According to the testimony of James Raley the use and enjoyment of the block was confined to the planting of some figs and berry vines, an occasional use of the land for pasturage purposes, cutting mistletoe off the trees, and planting two strips of sorghum perhaps once or twice. Frank Dawson, a witness for Helen Raley, swore that he lived two or three blocks from the block in controversy, that it was covered with brush, except some open spaces like a road, that Raley planted a little cane in the open space, which was very small, at one end, 10 or 12 feet wide and at the widest part 35 feet, and perhaps 100 to 200 feet long. The block contained about 2½ acres. The only use Dawson made of the block was to turn his cattle in, and when they ate the cane they walked out. That was in 1910 and 1911. Dawson said he never saw any fig trees or blackberry vines on the land. He had lived near the land 10 or 12 years and saw nothing planted on the land except the two plantings of cane. It required continuous use and possession to acquire title by limitation. There was no pretense of this by Helen Raley or her agent. Pendleton v. Snyder, 5 Tex. Civ. App. 427, 24 S. W. 363; Buster v. Warren, 35 Tex. Civ. App. 644, 80 S. W. 1063; Hutcheson v. Chandler, 47 Tex. Civ. App. 128, 104 S. W. 435. In the last case cited it was said: "The property was inclosed, it is true, and appellees may be said to have been in possession by reason of this inclosure, but the acts of use or enjoyment seem to have been confined to the planting of a few trees and rose bushes and to an occasional use of the prop-

erty by certain persons, with the permission of appellees, for the purpose of pasturing therein two or three cows 'to keep the grass down.' This use was not shown to have been continuous." Peaceable and adverse possession means a possession that is "actual, continuous, visible, notorious, distinct, hostile, fair and open." Hunter v. Malone, 49 Tex. Civ. App. 116, 108 S. W. 709. The first assignment of error of Helen Raley is overruled.

[3] The second assignment is to the effect that a deed given by a vendor to another party before default on the part of his first vendee is void. At the time that M. H. Poor executed the deed to D. M. Poor he still owned the superior title to the land, and while he could not convey the equitable title owned by R. W. Coleman he could convey his legal title to another. Such sale did not amount to a rescission of his sale to Coleman, but the evidence purpose was to put D. M. Poor in the position occupied by M. H. Poor, which appeared from a transfer of the $650 note to D. M. Poor. The evidence showed that D. M. Poor was the real owner of the land, and the deed to him was merely a recognition of his right to the land or its proceeds. M. H. Poor had been holding the the land in trust for D. M. Poor.

[4] The third assignment of error is overruled. This is not an action to set aside a deed made by M. H. Poor to Helen Raley, and the case of Kennon v. Miller, 143 S. W. 986, decided by this court, has no applicability whatever. Helen Raley was not in possession of the land for five years and cannot claim anything under the statute of limitation of five years. The fourth assignment is without merit, and is overruled. James Raley, for Helen Raley, recognized D. M. Poor's right to the land by offering him $400 for it. That offer was made in 1911.

There was no evidence to sustain improvements in good faith by Helen Raley. She obtained the quitclaim deed, at a cost of $15, with the evident intention of endeavoring to perfect a title by limitation, and that showed that she was not acting in good faith in putting the trifling improvements she did on the land. Staley v. Stone, 41 Tex. Civ. App. 299, 92 S. W. 1017. There is nothing in the evidence to show that the improvements added anything to the value of the land. Herndon v. Reed, 82 Tex. 647, 18 S. W. 665.

[5] When M. H. Poor sold the land in question to R. W. Coleman, reserving a vendor's lien, the superior title remained in him, and when M. H. Poor afterwards conveyed the land to D. M. Poor that title was conveyed to him. That deed was placed on record, and Helen Raley was charged with notice of it when she accepted a quitclaim deed from M. H. Poor. The letters written by her agent to D. M. Poor clearly show that they knew of D. M. Poor's claim to the land and that M. H. Poor had conveyed nothing to Helen Raley.

She was in December, 1911, claiming the land, not by purchase, but by "the three year statute of limitation, and by estoppel." There is no evidence upon which to base the claim of estoppel.

[6] The suit on the note against Carrie Burr was filed before the four years from the due date had expired, but if it had been filed afterward and the continued absence of Mrs. Burr from Texas be not taken into account still the question of limitation is not an issue because Mrs. Burr did not plead limitation. No one else can raise that question for her, or obtain any advantage from the suit not having been prosecuted after it was filed. Mrs. Burr admitted the justness of the claim of D. Sullivan & Co. against the land.

[7] When D. M. Poor bought the land from Mrs. Burr and assumed the debt of $650, evidenced by the note given by R. W. Coleman, he became the principal obligor thereon and D. Sullivan & Co. could, and no doubt would, have sued him for the debt had he not concealed the fact of his assumption of the debt. His concealment of his assumption of the debt was positive, active fraud upon the rights of the holders of the note and was not a mere failure to disclose, and the statutes of limitation did not begin to run until the fact of his obligation was discovered. It does not appear that the fraud could have been discovered any earlier than it was by any amount of diligence. Ransome v. Bearden, 50 Tex. 119; Calhoun v. Burton, 64 Tex. 515; Railway v. Gay, 86 Tex. 571, 26 S. W. 599, 25 L. R. A. 52; Oldham v. Medearis, 90 Tex. 506, 39 S. W. 919; Pitman v. Holmes, 34 Tex. Civ. App. 485, 78 S. W. 961; Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48.

[8] The statute of limitation did not run in favor of D. M. Poor. When Poor was declared a bankrupt in 1909, he did not list the land in question as a part of his assets and did not mention the $650 note which he had placed with D. Sullivan & Co. as collateral security. His discharge in bankruptcy did not release him from his debt, or his land from the lien. In section 17, p. 3428, U. S. Comp. St. 1901, it is provided that a bankrupt will not be released from debts which "have not been duly scheduled in time for proof and allowance, with the name of the creditor if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy." Easley v. Bledsoe, 59 Tex. 488.

[9] It is well sustained by authority that D. M. Poor, by his promise to pay the note as a part of the consideration for the deed executed by Mrs. Burr, became liable to pay the note to D. Sullivan & Co., and in default became liable personally to them and a suit could be maintained by them directly against him for foreclosure of the lien. McCown v. Schrimpf, 21 Tex. 22, 73 Am. Dec. 221;

Spann v. Cochran, 63 Tex. 240; Heath v. Coreth, 11 Tex. Civ. App. 91, 32 S. W. 56.

[10] Mrs. Burr has filed no brief in this cause, and there being no fundamental error as to her the judgment will not be disturbed. However, she sold the land to D. M. Poor and could not recover it from him.

We have considered all the points of any consequence or importance in the case, and finding no error justifying a reversal, the judgment is affirmed.

### On Motion for Rehearing.

It was incorrectly stated in the original opinion that Mrs. Burr had not filed a brief, and the brief of Mrs. Burr has been considered in connection with her motion for a rehearing. We find no merit in her assignments of error. She had sold all her interest, a mere equity, in the property to D. M. Poor and could be interested in no way except to see her indebtedness to D. Sullivan & Co. paid off and discharged. D. M. Poor took her place as to the debt for the original purchase money for the land. No judgment was obtained against her on that note, and she has no more right, title, or interest in the land than she would have had if D. M. Poor had paid off and discharged the note, and she has no right to be urging the questions raised in her brief. Her assignments are all overruled, as well as her motion for rehearing.

The motions for rehearing of D. M. Poor and Helen Raley are also overruled.