## Delta County v. W. A. Blackburn et al.

### No. 1547. Decided May 30, 1906.

**County— School Land — Sale — Release of Obligation — Limitation —Vendor's Lien.**

A purchaser of school land from a county gave his note for the price, due in twenty years, at seven percent interest, reserving the right to pay it off any time after twelve years. This time having expired, he, being prepared and intending to pay the note unless the interest was reduced, but threatening instead to discontinue his payments and forfeit the purchase, obtained an order from the Commissioners' Court reducing the future interest till maturity to three percent per annum, on which terms he agreed to continue paying till the twenty years expired. He then sold to vendees, who assumed and completed the payments at the reduced rate of interest, after which the county sued to collect the balance of interest according to the original contract. Held:

(1) That the order reducing the rate of interest was beyond the power of the court to make, being a partial release of an obligation to the county (Const., art. 3, sec. 55). (P. 57.)

(2) If regarded as in effect a payment and new contract to keep the money at a lower rate, it was a reinvestment of the proceeds in a way not authorized by law (Constitution, art. 7, sec. 6). (Pp. 54–56.)

(3) The county could recover the unpaid interest secured by the original note. (Pp. 54–57.)

(4) Limitation did not run against the county as trustee of school funds, in which it represents the sovereign, and interest due more than four years was not barred. (Pp. 57, 59.)

(5) The subsequent purchasers, who had assumed the payment only at the reduced rate of interest, were not personally liable beyond that amount; but they held the land subject to the vendor's lien for the debt at the original rate, of which and the validity of the reduction they had notice by the face of the transaction. (P. 59.)

(6) If the lien was enforced against the land of the purchasers, their vendor became liable to them. (P. 59.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Delta County sued Blackburn and others and appealed from a judgment for defendants. The judgment was affirmed and appellant obtained writ of error.

*J. L. Young,* for plaintiff in error.—There was no consideration for the agreement to reduce the interest. Const., art. 7, sec.4; Rev. Stats., arts. 794, 894, 901; Bland v. Orr, 90 Texas, 492; Beasley v. Boothe, 3 Texas Civ. App., 98; Hall v. Johnston, 6 Texas Civ. App., 110; Norris v. Graham, 42 S. W. Rep., 576.

The Commissioners' Court was without authority to make the order reducing the rate of interest. Const., art. 7, secs. 1, 4, 5; Rev. Stats., arts. 794, 901, 3891e, 3902, 3020a and 3934; Pulliam v. Runnels Co., 79 Texas, 363; Const., art. 7, sec. 5; art. 5, sec. 18; Rev. Stats., art. 3891, secs. a to h; Bland v. Orr. 90 Texas, 492; Mills Co. v. Lampassas Co., 90 Texas, 603; Dallas Co. v. Club Land and Cattle Co., 95 Texas, 200; Hardin v. Smith, 49 Texas, 420; Stitzle v. Evans, 74 Texas, 599; Liverpool & L. & G. Insurance Co. v. Ricker, 10 Texas Civ App., 264; McCamly v. Waterhouse, 80 Texas, 343; Huffman v. Mulkey, 78 Texas, 556; Cooley, Constitutional Lim. (7th ed.), 278; Barker v. Torrey, 69 Texas, 11; Boydston v. Rockwall County, 86 Texas, 238.

*Jas H. Robertson* and *Cochran & Penn,* for defendants in error.—The relinquishment by Blackburn of his right to pay off the $25,000 note until the 11th day of May, 1907, and his agreement to continue the indebtedness and to pay the interest thereon at three percent per annum for the definite period of eight years was a sufficient consideration for the reduction of the interest, and change in the contract. Benson v. Phipps, 87 Texas, 578; Kearby v. Hopkins, 14 Texas Civ. App., 182; Krueger v. Klinger, 10 Texas Civ. App., 579.

The agreement or contract entered in the minutes of the court having been intended and treated as a valid contract and acted on for more than five years, and having been partially executed, thereby became binding, at least so far as executed, even if the court should hold that it was not sufficient under the statute of frauds; and appellant, by making the order and thereby inducing appellee Blackburn to continue the note when he would have paid same off if the interest had not been reduced and by accepting the interest under the order for five years, is now estopped to deny the validity of the contract. Dugan v. Colville, 8 Texas, 126; Whitson v. Smith, 15 Texas, 36; Ponce v. McWhorter, 50 Texas, 571-2; Westfall v. Perry, 23 S. W. Rep., 741; Indianola v. Gulf, W. T. & P. Ry. Co., 56 Texas, 594; Bond v. Terrell Mfg. Co., 82 Texas, 309; West Texas Railway Co. v. Gentry, 69 Texas, 625; City of Corpus Christi v. Central Wharf Co., 8 Texas Civ. App., 94; Steger v. Davis, 8 Texas Civ. App., 23; Fort Worth Pub. Co. v. Hitson & Reed, 80 Texas, 216; Rio Grande Cattle Co. v. Burns, Walker & Co., 82 Texas, 56; Kinkler v. Junica, 84 Texas, 116; Robertson v. Tonn, 76 Texas,

542 (bottom of page); Pryor v. Pendleton, 92 Texas, 384; Williams v. Payne, 169 U. S., 55; Williams v. Morris, 95 U. S., 455.

The contract of sale of the Delta County school land being executory, the superior title remaining in the county and, by the terms of the contract, appellee Blackburn having the right after the 11th day of May, 1899, to pay off the note sued upon and stop the interest thereon, the Commissioners' Court of Delta County had the power and authority under the law to cancel the sale of the land or to change or modify the contract of sale as to the court seemed best, and if in doing so the court did not act for the best interests of the fund, the county alone became responsible to the fund for any mismanagement or dereliction of duty on the part of the Commissioners' Court. Const. State of Texas, art. 7, sec. 6; Sayles Stats., art. 1537, subdivision 8; Sayles Stats., art. 4271; Wise County v. Waggoner, 17 Texas Civ. App., 220; Boydston v. Rockwall County, 86 Texas, 238.

The court erred in overruling appellee Blackburn's special exception to plaintiff's petition on the ground that the cause of action asserted against him was barred by limitation; and in sustaining appellant's special exception to appellee Blackburn's answer pleading the statute of four years' limitation against plaintiff's demand. Houston & T. C. Ry. Co. v. Travis Co., 62 Texas, 16; State v. Gibson, 65 S. W. Rep., 692; Ward v. Marion Co., 62 S. W. Rep., 559; Johnson v. Llano Co., 15 Texas Civ. App., 421; McKinney v. Robinson, 84 Texas, 496; Collins v. McCarty, 68 Texas, 150.

WILLIAMS, ASSOCIATE JUSTICE.—The facts of this case as shown by the evidence and found by the district judge and the Court of Civil Appeals are as follows: On May 11, 1887, W. A. Blackburn purchased from Delta County its four leagues of school land, giving for the purchase money his note for $25,000 bearing interest at the rate of seven percent payable annually in advance, the principal to mature at the end of twenty years with the right on Blackburn's part to pay it at any time after the expiration of twelve years from its date. The note and the deed executed by the county expressed this contract, the latter reserving a vendor's lien to secure payment of the notes. Blackburn entered into possession of the land and paid the stipulated interest annually until May 11, 1899. At some time between that date and November 14, 1899, after his right to pay off the note accrued, Blackburn went to Cooper, Delta County, provided with funds and intending to exercise the option, unless he should secure a reduction in the rate of interest. He applied to the Commissioners' Court for a reduction of rate to three percent, representing that the value of the land had so decreased that he would no longer pay interest at the rate of seven percent, that he would throw up the trade unless they acceded to his request; that, if he did so, the county could not sue on the note, because of its phraseology, or recover any interest thereon until 1907. He did not inform them of the fact, to which he testifies, that he was prepared and intended to pay off the note if he failed to secure the reduction of interest. The Commissioners would have preferred payment to the arrangement he proposed, had they known of his purpose. After a private consultation of

the members of the court among themselves, a proposal was made to him by one of the Commissioners, speaking for the court in open session, that if he would pay $750 as the interest due on the note up to May 11, 1900, and the interest to accrue thereafter on said note at the rate of three percent as same annually accrued until May 11, 1907, they would pass an order reducing the rate of interest so due to three percent. To this Blackburn and all of the commissioners assented, and the following order was entered upon the minutes of the court: "November 14, 1899. It is ordered by the Commissioners' Court that the interest on the Delta County school land note executed by W. A. Blackburn to said Delta County for the purchase money of land, be and the same is hereby reduced to three percentum per annum until paid." The $750 for the interest of 1899-1900 and all instalments subsequently falling due under this arrangement were regularly paid as they fell due, by Blackburn, until his sale to Tucker hereinafter stated, and, by Tucker and Laird, thereafter until May 11, 1904. The instalment which should have been paid then was unpaid at the date of the institution of this suit, which was August 10, 1904, but was paid subsequently. October 6, 1900, Blackburn conveyed the land to defendant, J. E. Tucker, by deed which recited as a part of the consideration "the further consideration of said J. E. Tucker assuming the payment of the principal and all interest accrued and to accrue from and after October 1, 1900, of and upon a certain promisory note executed and delivered by me to Delta County, Texas, for the sum of $25,000 dated May 11, 1887, and due May, 11, 1907, and which note originally bore interest at the rate of seven percent per annum, but which note, now, by virtue of an agreement between me and the Commissioners' Court of Delta County, bears interest at the rate of three percent per annum only," and which contained a general warranty of title against all claims, "save and except that no warranty is given against the lien of said Delta County upon the said four leagues of land to secure the payment of the note hereinbefore mentioned in favor of said county." On December 17, 1902, Tucker conveyed to defendant Laird one-fourth interest in the four leagues of land "in consideration of the said D. C. Laird assuming the payment of one-fourth of a certain promisory note (describing that before stated) and now bearing interest at the rate of three percent per annum." This action was begun by the county, as stated, August 10, 1904, against Blackburn, Tucker and Laird, to recover interest upon the note at the rate of seven percent from May 11, 1899, less the payments which have been made, and to foreclose the vendor's lien upon the land, upon the theory that, for a number of reasons, the chief of which is a lack of authority in the Commissioners' Court under the law to thus deal with the school fund belonging to the county, its action reducing the rate of interest is of no effect.

Section 6 of article 7 of the Constitution gave authority to the county to "sell or dispose of its lands in manner to be provided by the Commissioners' Court" and declared that the lands and the proceeds thereof, when sold, should be held by the county alone as a trust for the benefit of public schools. It further provided that the proceeds should be invested in bonds of the United States, the State of Texas, or counties

in the state, or in such other securities and under such restrictions as may be prescribed by law, and that the county should be responsible for all investments. At the time of the transaction in question, the law did not authorize the investment of the proceeds of sales otherwise than in bonds. The Constitution, by section 55 of article 3, further provided: "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability, or obligation of any incorporation or individual to this state or to any county or other municipal corporation therein."

All of these provisions must be kept steadily in mind and receive their proper effect in determining the question as to the power of the Commissioners' Court to make a valid agreement such as that relied on by the defendants. The power to sell or dispose of the lands in the manner to be provided by the Commissioners' Court is comprehensive and carries with it the right to do all things incidental to its proper exercise; but that provision of the Constitution must not be extended beyond its proper sphere of operation and made the pretext for doing things inhibited by the other rules prescribed which must also be respected in determining its scope.

Whether a sale shall be made for cash or on credit, and by executed conveyance or executory contract, are questions evidently committed to the Commissioners' Court; and it may be conceded that, where a credit sale is made under an executory contract, the county, represented by its Commissioners' Court, is invested with the power over the title remaining in it which an ordinary grantor would usually have under a like form of contract; that its power to cancel the sale for default in performance by the vendee, to resume its title and to resell would be as perfect as would be the power of an individual under like circumstances. This is the theory upon which the decision in the case of Waggoner v. Wise County rests. (17 Texas Civ. App., 220.) Wise County sold by executory contract to Waggoner and Halsell whose title passed to Lynn and from him to Jameson, the two last assuming, in turn, the obligation which had been given by Waggoner and Halsell for the purchase money to the county. After that obligation matured, the county agreed with Jameson to take, in lieu of it, his note, payable in future, with a mortgage on the land to secure it, and release Waggoner and Halsell. This was held to be, in legal effect, a cancellation of the sale to Waggoner and Halsell and a resale to Jameson. Thus viewed, the action of the county was but the exercise of its power as vendor over its title in selling or disposing of the land. It was not, in substance or legal effect, an investment of the proceeds of a sale. It was a releasing of the liability or obligation of Waggoner and Halsell, but, if it came within the power of sale expressly given by section 6 of article 7, it could not be held to be prohibited by section 55 of article 3 of the Constitution, since those provisions must stand and operate side by side.

But while the Commissioners' Court may be conceded, for present purposes, to possess such an authority as was there exercised, as incidental to its control as vendor over the title to the land, it does not follow that it has all of the power which an individual would have to change at will the rights arising out of a contract already made in

selling. It can not lawfully invest the proceeds of sales otherwise than as the law directs; nor can it release or extinguish liabilities or obligations which have accrued to the county or State further than may be essential to the proper exercise of the power of sale or disposition given to it. There are some expressions in the opinion of the Court of Civil Appeals in Waggoner v. Wise County, concerning the power of investment possessed by the court, which were not essential to the decision and which are not to be regarded as its true basis. They seem to be based upon a misconception of the language of the opinion of this court in Boydston v. Rockwall County (86 Texas, 238), which case is also relied on by defendants in error to sustain their defense in this case. One of the questions there was whether or not an investment of funds of the county in the bonds of another county was governed by the general rule authorizing investments in such securities, or by the special statute authorizing and prescribing the mode of the conversion of investments in one kind of securities into investments in other securities, and it was held that the general rule and not the special statute governed under the facts of that case. It was of the special statute the court said "The statute does not restrict the general power of the court over the investment of the school fund. It was intended to confer a special authority to do a particular thing in a certain contingency." It was not intimated in that case that the Commissioners' Court has power to invest the funds in securities other than those prescribed by the Constitution and statute, in one kind of which securities the investment there in question had been made.

What then was the true legal character of the transaction in this case relied on by the defense? When it occurred, Blackburn was liable absolutely to the county for the principal of the note and the interest thereon, at least, which had accrued between May 11, 1899, and November 14 of the same year. He had the option to discharge this liability by payment, but he was under the obligation either to pay the whole then or to continue to pay interest at the rate fixed by the original contract until such time as he should do so. These were precisely his rights and obligations. As he was prepared, in purpose and in funds, to extinguish the entire debt, in case he could not secure the desired change in the contract, it was not within the power of the county, as vendor, to rescind and resell, without his consent, and neither party contemplated any such thing. Judging the transaction by Blackburn's attitude, he had the money in hand and intended, not a concellation, but either a performance of or a change in the contract. Had he dealt openly and tendered the money and then made the arrangement to retain it under the agreement set up, it is too plain for argument that the substance of the contract would have been an investment of the proceeds of the sale in a loan to him, an investment unauthorized by law. While the commissioners were ignorant of his real purpose, that is the character which he now attempts to fix upon the transaction, and he is in no position to say that it was an assertion by the other parties of the right of the vendor to cancel the sale and to make another contract of sale. The effect which he ascribes to the agreement thus carries it beyond the legitimate authority of the court and can not be admitted.

If the matter be regarded as the commissioners regarded it, the conclusion is equally fatal to his defense. They simply attempted to release him from his alternative obligation to pay the whole debt at once or to continue to pay interest at the rate of seven percent, which, under the Constitution, they had not the power to do. It is idle to say that they exerted the power given them to sell or dispose of the land. It had been sold and neither party intended that the sale should be disturbed. Such an extension of that power is not at all essential to its full and free exercise, but would make it impinge upon the other positive constitutional provisions which restrict the authority of the counties in dealing with such subjects and would open the door for many evasions thereof.

If a contract be free from other objections, it may be true that the surrender by a debtor of the right to pay off the debt at once, coupled with the agreement to keep the money and pay interest upon it for a stipulated time, is a valuable consideration for the promise of the creditor to reduce the rate of interest; but the very essence of such an agreement is that it is an investment of the money for a stated and definite time. This is the character which the defense attributes to the agreement in question, which brings it to the test, not of the constitutional provision conferring the power of sale, but of that controlling the investment of the fund. Differently viewed, as the commissioners viewed it, their attempt, instead of setting at naught the contract of sale, reasserting the title of the county and reselling the land, was to keep the sale in force, and, by releasing the vendee from a part of his unquestionable obligation to the county, to induce him to perform the remainder in a somewhat different way, which infringed the other provision of the Constitution forbidding the release or extinguishment of liabilities and obligations to the county.

In any aspect, the agreement between the Commissioners' Court and Blackburn, though it were held to comply with the statute of frauds and to be free from all of the other objections made to it, was void because the commissioners had no lawful power to make it. We have therefore found it unnecessary to discuss the assignments questioning the ruling of the trial court in sustaining exceptions to those parts of the plaintiff's pleading seeking to avoid the agreement on the ground of fraud practiced by Blackburn through the representations and concealment which have been stated. We may say, however, that, if it be true that those facts might be made a basis for a judgment setting aside the contract, considered as otherwise valid, the pleading did not sufficiently state the facts essential to such relief and there was no error in sustaining the exceptions.

Against the effort to recover those instalments of interest which became due more than four years before the institution of the action, the defendants, by exceptions to the petition, claimed the benefit of the statute of limitations. We are of the opinion that limitation does not run against a county upon such a cause of action as that asserted, and that the trial court properly overruled the exception. In the case of Brown v. Sneed (77 Texas, 471), any doubt that might have been left by previous decisions as to whether or not the statute runs against the

State in personal actions when suing in its governmental capacity, was removed, and it was held that mere silence of some of the statutes on the subject and express provisions of others that they should not bar the State did not affect the rule of the common law which exempted the sovereign from the operation of such statutes.   (See also Stanley v. Schwalby, 85 Texas, 353.)

In the case of Coleman v. Thurmond (56 Texas, 514), it was broadly stated that the statute did not run against a county, for the reason that it was a part of the State, performing a portion of its governmental functions and entitled to the immunity that belonged to it.   In Houston & Texas Central Railway Co. v. Travis County (62 Texas, 18), the principle was limited to cases "where the sovereignty is substantially interested in and vested with the right and ownership of the subject matter in litigation and which is sought to be subjected to the operation of the statutes of limitations," and it was, in effect, held that in other classes of cases the statute operates against counties.   This distinction seems to be generally observed with reference to municipal corporations and to protect causes of action asserted by them when "they are of a public nature and such as pertain purely to governmental affairs."   (17 Am. & Eng. Ency. Law., 191, and cases cited.)   It would be difficult to apply the principle thus expressed in favor of towns and cities consistently with some of our own decisions.   (Galveston v. Menard, 23 Texas, 408; Mellinger v. City of Houston, 68 Texas, 40-41), but, as we have seen, it has been applied in favor of counties which, when suing substantially in behalf of the State, are treated with respect to this question as if they were the State.

It is declared by the Constitution that the counties hold their school lands and the proceeds thereof in trust for the public schools therein. Those schools are institutions of the State established in the counties and, as a part of the State's governmental policy, maintained, in part, from taxes and other funds directly furnished by the State and, in part, from the interest upon the funds realized from the lands entrusted by the State to the management of the Commissioners' Courts of the counties as instrumentalities in executing that policy.   The counties are thus trustees for the benefit of State's public schools, and suits brought by such trustees to protect the funds of which they have the control for the purpose of the trust are practically suits in behalf of the State. (State v. Crumb, 157 Mo., 545.)

As said in Webb County v. School Trustees, 95 Texas, 137: "That the several funds so provided for the respective counties were to supplement the portion of the general available fund of the State which should be set apart to the respective counties and to be appropriated solely to the support of the schools established by the State, is made clear by the declaration that 'the lands and proceeds, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein.' The counties are mere trustees and the public schools are the beneficiaries."

And in Dallas County v. Land and Cattle Company, Id., 209, is was said:   "But the distinction between Dallas County in its ordinary

corporate capacity and Dallas County as trustee must be kept in mind." The two cases just referred to bring out clearly the relation of the counties and their Commissioners' Court as trustees, to carry out the behests of the State in the management of the school fund committed to their control.

The Constitution, in terms, exempts the title to the school lands held by the counties from the operation of limitation, and it might be urged that this excludes the idea that the exemption was intended to exist with respect to other causes of action growing out of the management of the school funds; but, apart from the consideration that the purpose thus shown to preserve the property as a trust fund for the benefit of the schools would be but poorly subserved if the right to the possession and control of monies derived from sales for the purposes of the trust may be lost by limitation, the decisions holding that like express provisions in favor of the State do not exclude the broader exemption of the common law fully meet the argument. Our conclusion is that limitation does not apply to the cause of action and that Blackburn is liable for the whole of the interest at the rate of seven percent, which has not been paid.

As to Tucker and Laird, the county has no contract with them and could only hold them personally liable upon an assumption by them of the liability of Blackburn. We think it fairly appears from the recitations in the deeds that, while they undertook to pay the note held by the county, this was done upon the assumption that the rate of interest was three percent and that their agreement can not be held to extend beyond that rate. The conclusion that the agreement reducing the rate of interest is invalid does not enlarge their undertaking and make it include something they never agreed to pay. But the debt of Blackburn is secured by a lien upon the land and they can not be protected against such lien either because they are innocent purchasers or because the county is estopped to assert it against them. They bought, it is true, upon the faith of the order reducing the interest, and, if that order purported to be within the authority of the Commissioners' Court, it may be that the county could not assert its invalidity against them, if the other facts existed entitling them to protection as innocent purchasers. But the order contains nothing to represent the transaction between Blackburn and the county to have been different from what it actually was—an attempt to make a contract beyond the power of the Commissioners' Court.

Under the construction given to recitals in the deeds, we are further of the opinion that, if the lands of Tucker and Laird shall be taken to pay the debt established against Blackburn, he will be to that extent liable to Tucker and Laird. To reach this result, a special covenant on the part of Blackburn is not regarded as essential. The essential facts are that Tucker and Laird have never made this debt their own and can not have their property taken to pay it without right to reimbursement from Blackburn under his general covenant of warranty.

The further assignments of error made by the parties become immaterial under the views expressed.

The judgment of the Court of Civil Appeals and of the District Court will be reversed and the cause will be remanded to the District Court to be disposed of in accordance with the law as declared in this opinion.

*Reversed and remanded.*