FULLERTON et al. v. SCURRY COUNTY.

(Court of Civil Appeals of Texas. Amarillo. Jan. 27, 1912.)

1. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—ACTION AGAINST COUNTY—ADMISSIBILITY OF EVIDENCE—NOTICE OF RESCISSION.

In an action against a county to establish the title and right to possession of school lands sold by the county to plaintiff's remote grantor, and which, after breach of the contract by the purchaser, by failure to make due payment, had been recovered by the county in trespass to try title against the purchaser alone, without notice to plaintiffs, and afterwards leased by the county, the order of the commissioners' court in 1892, directing the county attorney to bring suit on the school land notes, the original petition filed by the county in the action, the judgment, entered in 1894, canceling the original contract of sale, the testimony of county officers as to such proceedings by the county, the order of the commissioners' court, showing a lease of the lands, and the testimony of the lessees as to the lease and their occupancy thereunder were admissible in evidence, either under defendant's issue of limitation, or as bearing on the issue of when and how notoriously defendant had elected to rescind the original contract, and as tending to show notice on the part of plaintiffs of defendant's election to rescind and plaintiff's acquiescence therein.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—SALE—RESCISSION—RIGHTS OF GRANTEE.

Where a county sold its school lands, retaining a vendor's lien, and on the purchaser's failure to perform his contract brought an action to recover the land, these judicial proceedings, as such, to which none of the purchaser's grantees were in any way parties, did not divest them of their right, upon proper conditions and within proper time, to tender and obtain specific performance of the county's original contract of sale.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

3. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—SALE—NONPAYMENT OF PURCHASE MONEY—NOTICE TO GRANTEES.

Where no portion of the purchase price of school lands sold by a county has been paid, and default is made by the purchaser, his grantees and representatives, the grantor, if it acts promptly, may rescind the contract and retake possession of the land, without any notice to such grantees or their representatives, and thereby deprive them of any further rights or equities under the contract.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

4. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—SALE — ABANDONMENT BY PURCHASER'S GRANTEE.

Where the grantees of a purchaser of school lands, subject to a vendor's lien, knew that the land represented a trust fund in the hands of the county, and that the county was insisting on a strict compliance with the contract of sale, and also knew, when they failed to make payments as required by the contract, that the land was possibly not worth more than the debt against it, and, being financially able to make such payments, deliberately elect-

ed not to do so, their election, under such circumstances, amounted to an abandonment of their rights under the contract.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

5. VENDOR AND PURCHASER (§ 54*)—CONTRACT OF SALE—PURCHASER'S RIGHTS.

The purchaser's rights to land under an executory contract of sale are merely to acquire the title to the land by complying with the contract of sale; and the superior title rests in the grantor until the purchase price has been fully paid.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 85; Dec. Dig. § 54.*]

6. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—RESCISSION BY VENDOR—NONPAYMENT BY PURCHASER—NOTICE TO INFANTS.

Under an executory sale of a county's school lands, the county has a right, on failure by an infant purchaser to perform to rescind the contract and resume possession of the land, provided it elects to do so promptly, without notice to the minor of such rescission.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

7. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—RESCISSION BY COUNTY—RIGHTS OF INFANT GRANTEES.

Where a county has made an executory contract of sale of its school lands as an entirety, it has no power to so change the contract as to affect detrimentally the rights and interest of the school fund; and hence a minor grantee of the purchaser, although he has no notice of the county's rescission of the contract, cannot acquire an undivided interest with the school fund.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

8. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—RIGHT TO RESCIND—EXPRESS PROVISIONS.

There is no distinction between an express provision and an implied provision in a county's executory contract of sale of its school lands, so as to affect the county's right to rescind on breach by the grantee; but, if there is an express provision that the grantee's breach shall forfeit all he had paid on the land, equity cannot intervene as a result of the grantee's payment of a considerable part of the purchase price, though, if the right to rescind be expressed in the contract in language not clearly showing a forfeiture by the grantee of what he may have paid on the land, a court of equity might allow specific performance within a reasonable time.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

9. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—SALE—RESCISSION BY VENDOR.

Where the contract for a county sale of school lands provides expressly that the purchaser's breach of the contract shall forfeit all payments made, the mere fact that such payments amount to a considerable part of the purchase price will not warrant interference by a court of equity; but where the contract expressly reserves the vendor's right to rescind for the purchaser's breach, or such right is given by law, and the contract does not clearly declare a forfeiture of payments by the purchaser prior to the breach, equity may then

allow specific performance within a reasonable time.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**10. PUBLIC LANDS (§ 173*)—SCHOOL LANDS —CONVEYANCE—LAW OF STATE AS PART OF CONTRACT—RIGHT TO RESCIND.**

The law of the state, as it existed at the time of the making of an executory contract of sale of its school lands, to the effect that the grantee took the land, subject to the right of the county to rescind for failure on the part of the grantee to comply with the contract, whether such right was expressly embodied therein or not, entered into the contract and became a part of it.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**11. PUBLIC LANDS (§ 173*)—SCHOOL LANDS —SALE BY COUNTY—ACTION—LIMITATIONS.**

School land constituting a trust fund in a county, with specific limitations as to the manner in which the trust shall be performed, where it did not in fact pass as a result of the county's executory contract of sale, title therein would not arise by limitation as a result of acquiescence by county officers.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Lubbock County; L. S. Kinder, Judge.

Trespass to try title by William B. Fullerton and others against Scurry County. Judgment for defendant, and plaintiffs appeal. Affirmed.

L. W. Dalton, W. D. Benson, and Lewis Heins, for appellants. Beall & Beall and H. C. Ferguson, for appellee.

GRAHAM, C. J. Plaintiffs in error sued defendant in error, in the district court of Lubbock county, for title and possession of the lands involved in this appeal (being the lands patented to Scurry county by the state of Texas for free school purposes), alleging a sale of the lands to their remote grantor on July 5, 1886, entirely on a credit, the deed and notes providing for payment of the principal on July 5, 1916, and payment of interest at 6 per cent. annually on July 5th, alleged a chain of transfers to themselves and registration thereof, and then alleged a judgment, recovered in the district court of Lubbock county on March 26, 1894, in favor of Scurry county, against its original grantee, being the remote grantor of plaintiffs in error for the lands in controversy, without service of notice to plaintiffs in error or their immediate grantors, who, at the time of filing the suit and rendering the judgment, held all such title as had ever been in the defendants in that suit, as at that time shown by the proper deed records, alleged an ouster by defendant of plaintiffs from the land on November 1, 1908, and pleaded section 1, art. 14, of the amendments to the Constitution of the United States, as against the

binding force of said judgment. Allegation is then made of the payment of interest on the purchase-money notes to and including the year 1891, and a tender, in November, 1908, of the remaining interest and accrued interest thereon, as well as a refusal by defendant to accept same, a proffer to pay all such sums as were necessary to entitle plaintiffs to a right of redemption, and prayer is then made for judgment, for title and possession of the lands upon their complying with the decree of the court as to the unpaid purchase money, for writ of possession, for removal of cloud cast on their title as a result of the judgment of date March 26, 1894, and for general and special relief, legal and equitable.

Defendant answered by general demurrer, special exceptions, a general denial, a plea of not guilty, and special defenses to the effect that no rights passed out of the county as a result of the attempted sale of July 5, 1886, because the writings evidencing said sale were not on the terms authorized by the commissioners' court, a rescission in 1892 of the purported sale, because of a breach of the contract sale on the part of plaintiffs, arising from a failure to pay the purchase price as per contract, a judgment, of date March 26, 1894, canceling said purported sale and revesting title in defendant, and peaceable and adverse possession since that date, and also pleading the statute of limitations of three, five, and ten years. Defendant then pleaded notice on the part of plaintiffs of its repudiation of the sale, its election to cancel the same and repossess itself of the land, and an acquiescence by plaintiffs therein for more than ten years, resulting in an estoppel to now assert any right to or claim in the land. Allegation is then made of the expense of recovering the apparent title and possession of the land in the proceeding resulting in the judgment of March 26, 1894; allegation in effect being made that the land at that time was worth less than the debt, including the interest, then due against the land, but that at the time of filing this suit, as well as at the time of the alleged tender, the lands had vastly increased in value. Allegation is then made of acquiescence by plaintiffs in defendant's election to rescind the sale, and an abandonment by plaintiffs of the land and all such rights, if any, as they had ever had therein, long before the increase in value of said lands occurred, and prayer is made for cancellation of plaintiffs' title and quieting defendant's title, as well as for general and special relief.

By supplemental petition, plaintiffs pleaded minority of William B. Fullerton, one of the plaintiffs, until shortly before the filing of this suit, as avoiding the effect of limitation, laches, election, acquiescence, or stale demand, and also pleaded that if there were any irregularities about the original contract of sale by the county to their remote gran-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

tor the county had ratified said sale by accepting partial performance thereof, and were estopped from now questioning its validity. Prayer is then made that, in case they cannot recover the land or their rights under the original contract of sale in the nature of specific performance, they recover the interest paid on the contract of sale, as well as the accrued interest on said payments from their date.

By supplemental answer, defendant pleaded that limitation, laches, election, acquiescence, defaults, and abandonment applied as against said William B. Fullerton; and further, in effect, that it would be inequitable for William B. Fullerton to be allowed to have specific performance of a portion of a contract made as an entirety, or to award him a portion of the lands under the facts pleaded. Ratification by defendant of the original contract of sale is denied, and allegation is made of a prompt repudiation thereof in toto, upon default being made by plaintiffs in payment of the purchase money.

Many exceptions were urged by the parties, respectively, in their pleadings; but the record fails to show that any action was had by the court on any of them.

. The trial court, within proper time, prepared and filed his findings of fact and conclusions of law, which are properly before us, and, as the findings of fact are not assailed, except in one particular, and that we think not well founded, we will dispose of this appeal on the facts found therein without regard to the statement of facts, which is also before us; and for a better understanding of the issues on which we dispose of the appeal, we copy the trial court's findings of fact and conclusions of law, as follows:

"Findings of Fact.

"I find that, first, the state of Texas, on August 18, 1885, patented to Scurry county, Texas, as the school land to which the county was entitled, leagues 50, 51, 52, and parts of leagues 49 and 53, in Hockley county, and in the patents were described as described in plaintiffs' first amended petition.

"Second. The Commissioners' court of Scurry county, at the July term, 1886, accepted the bid of the Texas & Ohio Land Syndicate, Chillicothe, Ohio, for the purchase of said land, being $23,025.60, payable 30 years after date, and bearing interest at the rate of 6 per cent. per annum from date, interest payable annually in advance, and a vendor's lien on the land according to the respective patents thereof, for the proportionate amounts of the bid, in the ratio that the land described in patent bears to the whole number of acres conveyed by the patents— that is, the sum should be apportioned to the quantity of land as embraced in the five patents, or as near as may be to make a ratable proportion of the same; that there should be five deeds to the company, to be executed by the county, in the name of R. J. Nisbitt, county judge, as commissioner of Scurry county, Texas, who was designated as special commissioner for that purpose, with the power to execute the deeds for the county, which should be deeds of conveyance of all of said lands to the company, subject to the terms of the sale, and retain a vendor's lien on the respective parcels of land, for the principal and interest to become due upon the respective parcels of land, which amounts should be apportioned by the said Nisbitt, and embraced in five promissory notes, each payable on July 5, 1916, bearing interest at the rate of 6 per cent. per annum from date, interest payable annually in advance, and executed by Benjamin F. Stone, trustee, for said company, and his successors in office.

"Third. I find that the said Scurry county, through Nisbitt, the county judge, deeded the land in controversy, on July 5, 1886, to Benjamin F. Stone, trustee of the Texas & Ohio Land Syndicate, of Chillicothe, Ohio, and his successors in office, for the consideration expressed in the order of the commissioners' court, authorizing the sale of the land,. evidenced by five promissory notes, as provided for in said order, and apportioned as provided for; that said deed conveying the land was duly acknowledged and filed for record and recorded on September 11, 1886, in the records of Hockley county, Texas. On December 22, 1887, there was filed for record in the deed records of Hockley county, Texas, a deed from the said trustee, Stone, to Henry A. Thacher, of date November 18, 1887, to the land in controversy, and the same was recorded, for a stated consideration and the assumption of the unpaid price, and Henry A. Thacher, I find, became the owner of whatever right the said syndicate had. I find that on January 7, 1888, Henry A. Thacher deeded a one-half interest in said land to Wm. H. Fullerton, and said deed was duly acknowledged and recorded April 10, 1888, in the deed records of Hockley county, Texas; that on April 28, 1890, Henry A. Thacher deeded to Lucretia M. Thacher a half interest in said land. Said deed was duly acknowledged and recorded in the deed records of Hockley county, Texas, May 7, 1890. Lucretia M. Thacher is plaintiff in this case; that Wm. H. Fullerton died in October, 1888, intestate, and left surviving him, as his only heirs, the plaintiffs, Wm. B. Fullerton, a son born April 18, 1887, and his widow, plaintiff Katherine B. Fullerton, and a daughter, Louise, who died without heirs—born March 10, 1884; died September 21, 1891. I therefore find that by conveyance and inheritance from Wm. H. Fullerton the plaintiffs obtained whatever title and right the said syndicate had on the dates mentioned in this finding.

"Fourth. I find that the first five coupons to each note were paid; it being the coupons for 1887, 1888, 1889, 1890, and 1891.

"Fifth. I find that in the deed from Scurry county to the said Stone, trustee, there was reserved by the said county a vendor's lien in these words: 'To secure the payment of which said principal and interest, promissory note, as aforesaid, a vendor's lien is hereinafter retained.' This appearing in the first part of the deed, and in the latter part of the deed the following: 'But it is expressly agreed and stipulated, that the vendor's lien is retained against the above-described property, premises and improvements, until the above-described notes, and all interest thereon, are fully paid, according to their face, tenor, effect and reading, when this deed shall become absolute.'

"Sixth. I find that no other payments than the five mentioned were ever made or tendered by the parties or their representatives until, during the year 1908, Lewis Hines, representing plaintiffs, tendered to the commissioners' court of Scurry county all interest due and interest on interest due on all the leagues in controversy. He tendered the amount of interest due on each league separately for the full amount due, as represented by the outstanding coupons, and according to their tenor and effect.

"Seventh. I find that at the August term, 1892, the commissioners' court of Scurry county ordered the county attorney to bring suit on said vendor's lien notes, and at the November term, 1892, of said court, suit was again ordered; that on November 18, 1892, suit was filed by Scurry county in the proper court, against Benjamin F. Stone, trustee, as aforesaid, and the Texas & Ohio Land Syndicate of Chillicothe, Ohio, for the land in controversy, in trespass to try title, the ordinary form; that on March 26, 1894, after citation by publication having been had only on the defendant, Scurry county recovered judgment against the said Stone, trustee, for said lands, and entered the same in the minutes of the district court, but was not recorded in the deed records until November 11, 1909. To this suit neither plaintiff Wm. H. Fullerton nor Henry Thacher, nor either of them, were made parties, but only the two above mentioned, and neither had any notice of the suit or judgment.

"Eighth. That at the May term, 1897, of the commissioners' court of Scurry county it was ordered by the court that the Scurry county school land was placed upon the market; and that all bids would receive due consideration. At the March term, 1898, the court leased said lands to Devitt for a period of five years, at three cents per acre, beginning the 1st day of April, 1898. That on the 12th day of February, 1901, said court leased the land to Devitt and Flato for a term of five years, beginning the 1st day of April, 1901. J. T. Beal had leased said lands from Scurry county in 1894 to 1898. In 1898 he turned his lease over to Devitt and Flato. At the November term, 1903, of the said court, the court author-

ized Devitt and Flato to transfer or assign their leasehold contract to the Mallet Cattle Company. At the December term, 1905, of the said court, the court leased the lands to Devitt and Flato for five years, beginning April 1, 1906. That Scurry county has never taken actual possession of the land, nor any part of it. That it has been held by said lessees in a large pasture of many thousand acres, considerably in excess of 5,000 acres, and that no part of it has been segregated and separated from other lands in the pasture by a fence, and that one-tenth of it has never been cultivated or used for agricultural purposes. That there have been other lands with these in said pasture. This was the condition up to the time of seven years ago.

"Ninth. I find that from 1880 to 1901 land was cheap, and this land was worth about 75 cents to $1 per acre; that in 1906 land values began to increase, and gradually ran up until, when this suit was brought, values were from $6 to $10 per acre, and this land was worth $8 per acre.

"Tenth. I find that after the payment of 1891 the plaintiffs made no effort to pay the interest by tendering it, nor did their representative; that they were able to pay, but did not do so, nor offer to do so, until the year 1908, as aforesaid.

"Conclusions of Law.

"First. I conclude, as a matter of law, that Scurry county, when it ordered suit brought for the land, or on the notes, disaffirmed the contract, and the order being on its minutes gave notice to plaintiffs; that when it took judgment for the land it was a further disaffirmance, as were also the leasing of the land and the lessees taking possession thereof—all this having occurred prior to 1898, and the plaintiffs not having tendered performance prior to the year 1908, and having shown no excuse for not having done so. I further find that they come too late, and are guilty of laches, and therefore are not entitled to the land or to redeem the same, and that they take nothing by this suit, and that their deeds and those they hold under be canceled.

"Second. I find that the defendant has no limitation or adverse possession to support limitation under its claim and plea of limitation, on account of the size of the pasture the lands were held in. The defendant excepted to the finding of fact that any title was passed by the deed of Benjamin F. Stone to Henry A. Thacher; he being only trustee in the deed, with no authority to convey."

Under their first to seventh assignments of error, inclusive, urged in this court, plaintiffs in error, in the following order, complain of the admission in evidence:

(1) Of the order of the commissioners' court of Scurry county, directing the county attorney to bring suit on the school land

notes; the bill of exception showing that an order was made of record by said court at its May term, 1892, placing said lands on the market for sale.

(2) Of the original petition, filed November 18, 1892, by Scurry county, as well as the judgment rendered March 26, 1894, in the cause in which the original contract of sale was canceled and title revested in the county.

(3) Of the testimony of Branch Isbell, to the effect that he was county attorney of Scurry county in 1892, and was the same man who, under the instructions of the commissioners' court, brought suit for the purpose of revesting the county with its school lands, and which resulted in the judgment of March 26, 1894.

(4) Of the order of the commissioners' court, of date March, 1898, as well as the lease contract, showing a lease of the lands by the county to one Devitt for five years from April 1, 1898, and another order of the commissioners' court, made at its November term, 1901, as well as the lease contract, showing a lease by the county to Devitt and Flato for five years, beginning April 1, 1901, and another order by the commissioners' court, made in 1905, leasing the land by the county to D. M. Devitt for five years, beginning April 1, 1906.

(5) Of the testimony of J. F. Beall, to the effect that under written contract, executed by the county judge, he leased from the county, in 1894 or 1895, the lands in controversy for five years, and that he was in possession of said lands under said contract until the fall of 1898 or 1899, when he sold his unexpired leasehold right to Devitt and Flato, who then went into possession thereunder.

(6) Of the testimony of D. M. Devitt, to the effect that he and Flato had been in possession of the lands from 1897 to the time of trial, under leases emanating from the county as the tenant of the county, the last one having been executed in 1906, for a period of five years; they having first gone into possession under a lease made by the county to Beall, who sold out to them in 1897.

(7) Of the testimony of C. R. Buchanan, to the effect that on November 17, 1892, he assumed the duties of county clerk of Scurry county, and held that position four years; that he assumed the office of county judge November 14, 1906, of that county, and had held that office to the time of the trial; that he had, since 1892, been familiar with the actions of the county regarding its school lands, and that the lands were then under lease from the county by a tenant; and that from the time he first qualified as clerk in 1892 to the time of the trial the county had kept the lands under lease and in possession of some tenant.

[1] Under many propositions, all of which are to the effect that plaintiffs were in no way bound thereby, as all of said proceedings were ex parte as to them, it is contended that said evidence was inadmissible. We cannot agree with counsel in their contention, but believe the evidence complained of under each assignment admissible, either under the issue of limitation, or as bearing on the issue of when and how notoriously the defendant in error had elected to rescind the original contract of sale, as a result of the breach of said sale committed by plaintiffs in error in failing to comply therewith. We also think the evidence complained of was in the main admissible as a circumstance tending to show notice on the part of plaintiffs in error that defendant in error had elected to rescind the original contract of sale and reclaim the lands; that plaintiffs had acquiesced therein, and had abandoned the contract of sale.

[2] We do not concur in the contention made by defendant in error to the effect that the judicial proceedings, as such, to which none of the plaintiffs in error were in any way parties, divested them, or any one of them, of the right they, or either of them, had to, within proper time and under proper conditions, tender and obtain specific performance of the original contract under which the county judge sold the land to their remote grantors, and in which they acquired rights as grantees. Because we believe that the evidence complained of in the first seven assignments presented in this court by plaintiffs in error was admissible under some one of the issues presented by the pleadings, or as a result of other evidence introduced on the trial, and that therefore the trial court did not err in admitting same, said assignments will each be overruled. Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843; Staley v. Stone, 41 Tex. Civ. App. 299, 92 S. W. 1017.

Under the eighth assignment of error presented in this court, plaintiffs in error challenge the sufficiency of the evidence introduced to support the tenth finding of fact above copied and found by the trial court. We have, however, investigated the statement of facts upon this question, and, while the testimony is conflicting on the issue presented, we think there is testimony sufficient to support the finding of fact made by the trial court; and we therefore overrule said eighth assignment of error.

The remaining assignments urged by plaintiffs in error present the legal propositions:

[3] (a) That the vendor cannot disaffirm a contract for sale of land, executory in form and substance, without notice to the vendee, in the absence of an express agreement permitting such disaffirmance, though the vendee has breached the contract by failure to pay the purchase price according thereto. Contention is made under this proposition that, as no express authority is shown to have been given in this instance, authorizing a rescission without notice, and the

record fails to show such notice of a disaffirmance as is binding on the grantees, the rescission was ineffectual as to the grantees.

The weight of authority, as we understand it, appears to be to the effect that, where the purchaser has paid a considerable portion of the purchase price under an executory contract for the sale of land, it would then be inequitable to allow the grantor to rescind without notice, and thus deprive the grantee and his assigns of the right of redemption, or to have specific performance within a reasonable time, in the absence of an express contract of forfeiture. We think, however, the weight of authority in this state is to the effect that, where no portion of the purchase price has been paid, and default is made by the purchaser, his assigns and representatives, and the grantor acts promptly, he has the legal power to act on the breach of the contract thus made by such grantees and rescind the contract and retake possession of the land, without any notice to such grantees or their assigns or representatives, and to thus effectually and finally deprive them of any further rights under the contract, and we fail to see where any principle of law or equity is violated by so doing.

We find, as a fact in this case, that the amount that had been paid by the grantees, their assigns and representatives, prior to the time defendant in error rescinded the contract, was not more than sufficient to cover the value of the use of the lands from the time of the execution of the contract to the time of the breach thereof, when added to the expense to which defendant in error had been put as a result of the breach thereof, and that therefore nothing had in fact been paid on the purchase price of the land or in improving the same; and we therefore hold that when defendant in error elected to and did rescind the contract of sale, which it did to all intents and purposes in 1892, but which it certainly did when it actually took possession of the land and assumed exclusive ownership thereof and began leasing the same out for the account of its school fund, it effectually cut off any rights of plaintiffs in error to or in the land, legal or equitable. Kennedy v. Embry, 72 Tex. 387, 10 S. W. 88; Jackson v. Ivory, 30 S. W. 716; Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843.

[4] It is in effect contended by plaintiffs in error in this case that, under all the facts, it would be inequitable to hold that, even if defendant in error had a legal right to so far rescind as to repossess itself of the land, equity would require that the grantes and their assigns and representatives should have the right, within a reasonable time, to redeem. To this we answer that they werē chargeable with the terms of the contract under which they claim the land, knew that the grantor was insisting on a strict compliance therewith, further knew that the land represented a trust fund in the hands of the grantor, and that on a faithful discharge of the trust depended the educational interest of the children of Scurry county. They also knew at the time they breached said contract the land was possibly not worth more than the debt against it, and the findings of the trial court show that at the time of the breach, and at the time of the forfeiture, they were amply able financially to have complied with the contract, but deliberately elected not to do so, we think, under circumstances warranting the conclusion that they elected to abandon the contract as a matter of financial gain. Defendant in error was thus, as a matter of duty, compelled to retake the land as a means of protecting the interest of the school children, and do as best it could with the same until the land increased in value severalfold, when, for the first time, plaintiffs in error again sought to assert rights under the contract. Under these conditions, we not only fail to find any equitable principle requiring that they be allowed to do so, but think it would be very inequitable to the defendant in error and the school children of Scurry county to permit either of the plaintiffs in error to assert or recover any rights or interests in the land under the contracts so deliberately abandoned and breached by them.

[5, 6] (b) It is further contended in effect by plaintiffs in error that, even if the right exists under the law in this state to rescind by the grantor, without notice, on breach of the contract by the grantees, as to adult grantees, said rule cannot apply to a grantee who was a minor at the time of such breach and rescission. In disposing of this contention, it must be borne in mind that our courts have uniformly held that the grantee's rights to land under an executory contract of sale were simply to acquire the title to the land by complying with the contract of sale; that the superior title rested in the grantor until the purchase price had been fully paid; that not even a homestead right could be acquired in the land by the grantee, or under him, superior to or in such way as to deprive the grantor of his rights. It has also been held that even minors acquiring rights by descent under such a grantee do not acquire rights superior to that of the grantor. Jackson v. Ivory, 30 S. W. 716; Thompson v. Robinson, 93 Tex. 165, 54 S. W. 243, 77 Am. St. Rep. 843. In other words, the grantee under such instrument, whether a minor or an adult, must comply with the contract of sale, in order to mature or keep alive his rights under the contract, and a failure so to do constitutes a breach on his part of the contract of sale, entitling the grantor to exercise the options given him by law, one of which is to rescind the contract of sale and resume possession of the land, provided he elects so to do and promptly does so, and thus avoid the presumption of an acquiescence on his part in the breach

of the contract so made by the grantee; and this he will be permitted to do, in the absence of some equity that will prevent him from so doing, and we fail to find in this case any such equity in the minor as should be held to prevent the grantor from having rescinded, as against him, at the time it was done, and thereby depriving him of all further rights in or to the land.

[7] The contract of sale by the county having been made as an entirety, we think it had a right that the same stand or fall as a whole, and, the land itself being a trust fund, we doubt if the county had the right to change the contract of sale as originally made, so as to perpetuate the rights of the minor thereunder, and allow him to acquire an undivided interest in the land, and at the same time repudiate the contract as to the adult claimants, so as to deprive them of their rights thereunder. Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419. In other words, it would appear from the case last cited that the county was powerless to so change the contract as to affect detrimentally the rights and interests of the school fund; and to permit the minor in this case to acquire an undivided interest with the school fund in the lands, we think, would clearly be detrimental to the interest of the school fund.

[8] As to the contention of plaintiffs in error that there is a distinction between an express provision and an implied one in a contract, such as is under consideration, in so far as it may affect the right of the grantor to rescind in case of a breach by the grantee, we think there is no such distinction, and that the right of the grantor exists in either instance.

[9] If, however, there be an express provision, so worded as to show clearly that the grantee forfeits all he had paid on the land in case of a breach of the contract by him, then there would be no room for the intervention of a court of equity as a result of the grantee having paid a considerable portion of the purchase price; but if the right to rescind be expressed in the contract, or be in there as a result of the law, and the express contract be not so worded as to clearly show a forfeiture by the grantee of what he may have paid on the land, a court of equity would still allow specific performance within a reasonable time, if equity so required.

[10] It is contended by the plaintiffs in error that, in the absence of an express contract authorizing a rescission by the grantor without notice, to give a contract of sale of land such a construction is in violation of the amendments to the federal Constitution, art. 14, § 1. We call attention to the fact that the law of the state, as it exists at the time of the execution of a contract, enters into and becomes a part of such contract, and what we have said above is sufficient to show that at the time the contract of sale

involved in this appeal was executed it was a part of the law of this state that a grantee under such a contract took the lands, subject to the right of the grantor to rescind for failure on the part of the grantee to comply with the contract, whether such right was expressly embodied in the contract of sale or not.

We have not seen fit to discuss separately the various assignments of error presented in this court by plaintiffs in error, believing that no good purpose could be served by so doing. We have, however, considered each of them, and finding no reversible error pointed out in either of them they will all be overruled.

[11] Defendant in error submits in this court the proposition that, as the record shows the sale contract, executed by the then county judge of Haskell county, was not executed and closed as authorized and provided by the order of the commissioners' court, no title passed out of the school fund as a result of the execution and delivery of the deed and notes evidencing said sale. Replying to this contention, plaintiffs in error assert that, as said contract had been ratified and acquiesced in by the county, it was now bound thereby, even if, in fact, the contract as executed was not originally valid. The land being a trust fund in the county, with specific limitations as to the manner in which such trust should be performed, we think that if, in fact, no title passed as a result of the execution and delivery of the writings evidencing the attempted sale the same could not become binding as a result of acquiescence therein by the county officers. Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419.

Under the disposition we have made of the appeal on other issues, it becomes unnecessary for us to pass on the question of whether or not the grantees acquired any right to or in the land as a result of the attempted conveyance to Stone, as trustee, though we entertain a serious doubt about the matter. We also have some misgivings as to whether or not the deed from Stone, as trustee, being the conveyance under which all the plaintiffs in error claim, passed any title, as the record fails to show what his powers, as trustee, really were, while the deeds from the county to him, as trustee, clearly show that the lands were conveyed to him, as trustee, for the benefit of the "Ohio Land Syndicate," and we fail to find in the record any authority authorizing him to sell and convey, except as shown in the deeds from the county; but because of the disposition made by us of this appeal on other issues we have not found it necessary to dispose of this question.

Believing that under the facts found by the trial court the defendant in error had the legal right, under the contract of sale made by it with Stone, as trustee, for the land company, in 1886, to rescind the con-

tract upon the grantees and their representatives and assigns failing to comply therewith, and further believing that the record shows that defendant in error exercised promptly said right, and believing that it would be inequitable to permit plaintiffs in error, or any of them, to exercise the right of redemption or of specific performance as late as 1908, when, according to the record, they first sought to exercise such a right, and finding no errors in the record, the judgment of the trial court will, in all things, be affirmed; and it is so ordered.