

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

September 5, 1957

Honorable Earl Rudder
Commissioner
General Land Office
Austin, Texas

Dear Mr. Rudder:

Opinion No. WW-185

Re: Authority of School Land Board, by approval of a unitization agreement, and the Commissioner, by execution thereof, to agree to the extension of Lease No. M-18948 beyond its twenty-five year maximum term.

This is in reply to your letter of May 9, 1957, which sets out certain facts, hereinafter mentioned, and requests an opinion on the following quoted question:

"Can the School Land Board, by approval of the unitization agreement, and the Commissioner, by execution thereof, agree to the extension of the subject lease beyond the twenty-five year principal term?"

In this same letter you have set out facts which are as follows:

"On January 16, 1935, Lease No. M-18948, covering Tract 3, Dickinson Bay, Galveston County, containing 147 acres, was issued by the Commissioner of the General Land Office to the Stanolind Oil and Gas Company (now Pan American Petroleum Corporation). That lease was for '. . . a period of five years and as long thereafter as any minerals covered thereby are produced therefrom in commercial quantities not to exceed twenty-five years . . .'.

"In 1947, the Legislature enacted Chapter 82, Page 139 (Art. 5344c, V.C.S.), which provided, among other things, that such lease could be amended upon application by the owner filed with the Commissioner of the General Land Office before October 1, 1948, to provide that it would remain in effect as long after the expiration of the

primary term as the lease produced. The lessee of the lease here under consideration did not make application for amendment of the lease under the provisions of that Act.

"In 1951, the 52nd Legislature enacted Chapter 150, Page 254 (Art. 5382c, V.C.S.), under which statute the State's interest in any lease may be pooled or unitized.

"Pan American Petroleum Corporation has now requested this office to enter a unitization agreement whereby the above land will be unitized with other land to form a 630 acre unit. As part of the unit agreement, the lessee proposes the inclusion of a provision that the above lease will remain in force and effect as long as there is production from the unit in paying quantities and royalties paid to the State thereon. . . ."

Article 5382c states in Section 1:

". . . The Commissioner of the General Land Office, on behalf of the State of Texas or any fund belonging thereto, is authorized to execute agreements that provide for the operation of areas as a unit for the exploration, development, and production of oil and gas, or either of them, and to commit to such agreements the royalty interests in oil and gas, or either of them, reserved to the State or any fund thereof . . . under the terms of any oil and gas lease lawfully made by an official, board, agent, agency, or authority of the State; provided (a) that the agreements that commit such royalty interests in lands set apart by the Constitution and laws of this State for the Permanent Free School Fund and the several asylum funds, in river beds, inland lakes, and channels, and the area within tidewater limits, including islands, lakes, bays, inlets, marshes, reefs, and the beds of the sea, are approved by the School Land Board, and are executed by the owners of the soil if they cover lands leased for oil and gas under the Relinquishment Act. Articles 5367 to 5379, inclusive, Revised Civil Statutes, 1925, as amended; . . ."

Section 2 of this Article provides:

"Any agreement authorized to be executed under the provisions of this Act may provide . . . (3) that the agreement and/or lease, with respect to the interest of the State, shall remain in force as long as oil and gas, or either of them, is produced from the unit in paying quantities and royalties paid to the State thereon; . . ."

It is obvious from a complete reading of this statute and its title that the legislative intent is to allow the Commissioner of the General Land Office to enter into unitization agreements which in his judgment, and in the considered opinion of the officials and members of the boards and agencies whose lands are affected by such agreements, are found to be in the best interest of the State. The legislative intent is not to provide another opportunity for holders of State leases to extend maximum term leases previously executed as was done by the passage of Article 5344c, V.C.S., by the Legislature in 1947.

Section 1 of Article 5382c, V.C.S., contains the authority for the Commissioner to commit the State's lands to unitization agreements, and it should be carefully noted that in both the title of this Act and in its Section 1 the State's commitable interest is the _royalty_ interest. This is set out definitely and clearly by the use of the words "royalty interests in oil and gas" found in both the title and the authorizing section.

Under Lease No. M-18948, here being considered, there are three separate mineral estates. The first is the leasehold estate now owned by Pan American Petroleum Corporation. It is well settled in Texas that the estate owned by the lessee is a determinable fee interest. Corzelius v. Harrell, 143 Tex. 509, 186 S.W.2d 961 (1945); Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935 (1935). The State as lessor owns a royalty interest entitling it to 1/6 of the oil and gas produced, and it owns also the reversionary interest which comes into effect upon the expiration of the determinable fee. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004 (1941); Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741 (1934). There is nothing in the statute authorizing the Commissioner to commit any interests owned by the State other than the royalty interest created by the lease. There is no authority, either expressed or implied, which would allow the Commissioner to commit any part of the reversionary interest.

The determinable fee owned by Pan American under this lease is limited by its terms to "as long thereafter as any minerals covered hereby are produced therefrom in commercial quantities, not to exceed

twenty-five years, . . . .". Necessarily the royalty interest continues only so long as the lease is in force. State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757 (1940). Therefore, as the Commissioner may commit only the royalty interest reserved under the terms of this lease, he cannot continue the lease in force beyond the twenty-five year maximum term without thereby enlarging the determinable fee and the royalty interest. There is no authority to so change the terms of the mineral lease.

Some contention has been made that subsection 3 of Section 2 allows the Commissioner to extend the lease term by the inclusion of a provision that the agreement shall remain in force as long as oil and gas "is produced from the unit in paying quantities". We are of the opinion that the significance of this subsection is to allow production from the unit to qualify as production from the leased premises and thus satisfy the production requirements of the lease.

If, however, by some interpretation, it was thought possible to extend the term of the basic lease beyond its twenty-five year maximum, we are of the further opinion that such an interpretation would require an unconstitutional application of this statute as the extension would be in violation of Sections 44, 51, 53 and 55 of Article III of the Texas Constitution. These sections, in effect, prohibit the gratuitous disposition of the State's money, property or contractual rights. Empire Gas and Fuel Co. v. State, 121 Tex. 138, 47 S.W.2d 265 (1932); Delta County v. Blackburn, 100 Tex. 51, 93 S.W. 419 (1906).

When Pan American (then Stanolind Oil and Gas Company) bid on and purchased the subject lease in 1935, it was with the understanding that the maximum term of the lease would be twenty-five years. This term lease is what they bargained for and this is what they received. To now extend this term would be to grant to the lessee an additional property right and to diminish the reversionary interest owned by the State. For this valuable grant there would be no consideration moving to the State. Even under the provisions of Article 5344c, V.C.S., passed in 1947, which allowed amendment of then-existing maximum term leases, the School Board was required to fix a fee for such amendment which could not be less than two dollars per acre. Obviously to now allow the Commissioner to make a gratuitous amendment of the basic lease which would enlarge the mineral estate originally purchased would violate the constitutional sections mentioned above.

## SUMMARY

It is our opinion that the School Land Board and the Commissioner cannot agree to the extension of the subject lease beyond the twenty-five year principal term by the approval and execution of the proposed unitization agreement.

.Very truly yours,

WILL WILSON
Attorney General of Texas

By *J. Mark McLaughlin*
J. Mark McLaughlin
Assistant

JMM:tiw

APPROVED:

OPINION COMMITTEE:

George P. Blackburn, Chairman
James H. Rogers
J. Arthur Sandlin
Lawrence Jones
Wallace Finfrock

REVIEWED FOR THE ATTORNEY GENERAL
BY:   James N. Ludlum